Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


**OPINION**

No. 04-09-00216-CV

**IN RE WELLS FARGO BANK, N.A., AMERICA'S SERVICING COMPANY, PREMIERE ASSET SERVICES, LANGLEY & BANACK, INC., Robert Carl JONES, and Albert GARCIA**

Original Mandamus Proceeding[1]

Opinion by:    Rebecca Simmons, Justice

Sitting:    Catherine Stone, Chief Justice
Sandee Bryan Marion, Justice
Rebecca Simmons, Justice

Delivered and Filed: September 23, 2009

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

Relators Wells Fargo Bank, N.A. ("Wells Fargo"), America's Servicing Company, Premiere

Asset Services, Langley & Banack, Inc., Robert Carl Jones ("Jones"), and Albert Garcia ("Garcia"),

defendants in the underlying proceeding, filed a petition for writ of mandamus seeking to compel

the trial court to vacate the order denying relators' motions to compel arbitration. We conditionally

grant mandamus relief.

---

[1] This proceeding arises out of Cause No. DC-08-01, styled *Edward Huerta, et al. v. Wells Fargo Bank, et al.*, pending in the 229th Judicial District Court, Duval County, Texas, the Honorable Alex W. Gabert presiding.

# BACKGROUND

## A. *Deed of Trust and Arbitration Agreement*

The underlying dispute involves allegations that relators wrongfully foreclosed on Edward and Margarita Huerta's ("the Huertas") property. On December 27, 2000, the Huertas obtained a home equity loan in the amount of $33,600 from Wells Fargo. The loan was secured by a lien on property described as 4.867 acres of land with the address of "HC 1 Box 36 Concepcion, TX 78349," as evidenced by the Deed of Trust.[2] In connection with this loan, the Huertas and Wells Fargo entered into an arbitration agreement, referenced by and incorporated into the Deed of Trust. The arbitration agreement provides as follows:

> Any party to this Agreement or to any Loan Document may require that any Dispute be resolved by binding arbitration in accordance with the terms of this Arbitration Program, administered by the American Arbitration Association (the "AAA") . . . and the Federal Arbitration Act . . . .
>
> A 'Dispute' shall include any dispute, claim or controversy of any kind, whether in contract or in tort, legal or equitable, now existing or hereafter arising, relating in any way to this Note or Loan Documents or any related agreement incorporating this Arbitration Program (the "Documents"), or any past, present, or future loans, transactions, contracts, agreements, relationships, incidents, or injuries of any kind whatsoever relating to or involving consumer lending, business banking, community banking, Private Client Services, or any successor group or department of Lender. . . . Arbitration may be demanded at any time, and may be compelled by summary proceedings in Court.

---

[2] It is undisputed that this is not the correct property description. Wells Fargo sought to obtain a lien on the Huertas' home; however, according to the parties, the description of the property in the Deed of Trust is not owned by the Huertas.

In 2005, the Huertas defaulted on the home equity loan, and eventually filed for bankruptcy. The Huertas listed 9.95 acres as their homestead property. However, the property identified as the Huertas' homestead in the bankruptcy petition was not the same property as the property described in the Deed of Trust with Wells Fargo. Wells Fargo was listed in the "Schedule D-Creditors Holding Secured Claims." The Huertas listed Wells Fargo, with the following description: "Dec. 2000, supposed home equity loan on homestead property, 9.95 acres and home in Duval County Texas debtor disputes claim and avers it to be unsecured." According to the parties, neither the Huertas nor Wells Fargo ever filed an adversary proceeding related to the Wells Fargo purported lien.[3] On January 11, 2006, the Huertas were discharged under section 727 of Title 11, of the United States Code.

On May 5, 2006, Wells Fargo, through its counsel Langley & Banack and Jones, sought a non-judicial foreclosure of the home-equity loan based on the Deed of Trust. The property was purchased by Wells Fargo at the foreclosure sale. According to the Huertas, Wells Fargo then hired Garcia to evict the Huertas and remove their belongings from their home. Following the eviction, on January 3, 2008, the Huertas filed suit against Wells Fargo, Langley & Banack, and other defendants that are no longer a part of the case. Langley & Banack answered the suit on February 15, 2008, and Wells Fargo answered the suit on April 18, 2008. Then, on June 9, 2008, the Huertas filed their First Amended Petition, adding America's Servicing Company, who answered the suit on October 13, 2008, and Jones, an attorney at Langley & Banack, who answered the suit on July 1, 2008. On October 15, 2008, the Huertas filed their Second Amended Petition, adding Premiere

---

[3] The record does not include a copy of the Wells Fargo proof of claim.

Asset Services, who answered the suit on December 3, 2008, and Garcia, who answered the suit on November 5, 2008.[4]

On January 5, 2009, Wells Fargo, Premiere Asset Services, and America's Servicing Co., jointly filed a no evidence motion for summary judgment on the Huertas' claims for exemplary or additional statutory damages. The motion was set to be heard on February 6, 2009. However, on January 22, 2009, Langley & Banack and Jones filed a motion to compel arbitration. Because of the motion to compel arbitration, relators asked that the trial court remove the motion for summary judgment from the trial court's consideration. Subsequently, Wells Fargo, America's Servicing Company, and Premiere Asset Services filed a similar motion to compel arbitration. Finally, on February 3, 2009, Garcia filed a motion to compel arbitration.

In response to the motions to compel arbitration, the Huertas asserted there was not a valid and binding arbitration agreement because: (1) the agreement was only between "Wells Fargo Bank Texas, N.A." and the Huertas, not any of the actual parties to the lawsuit; (2) the agreement was discharged by the Huertas' bankruptcy; (3) the agreement was merged, and therefore, eliminated, by the foreclosure sale and the substitute trustee's deed of trust; (4) the Huertas' minor children were not bound by the arbitration agreement; and (5) Margarita Huerta, who signed the arbitration agreement "pro forma" was not bound by the arbitration agreement. In addition, the Huertas argued their claims did not fall within the scope of the arbitration agreement, and asserted the defense that relators waived their right to arbitration by substantially invoking the judicial process and by not requesting arbitration within a "reasonable time."

---

[4] The Huertas filed their Third Amended Petition on October 29, 2008 and their Fourth Amended Petition on January 21, 2009.

Following a hearing on the motions to compel arbitration on March 2, 2009, the trial court denied all of the motions to compel arbitration without detailing any explanation in the order. This petition for writ of mandamus ensued.

**ANALYSIS**

**A.      Standard of Review**

Relators contend the trial court erred in denying relators' motions to compel arbitration under the Federal Arbitration Act ("FAA"). The parties do not dispute that the arbitration agreement invokes the FAA. Mandamus will issue only to correct a clear abuse of discretion for which the relator has no adequate remedy at law. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). When a motion to compel arbitration under the FAA has been erroneously denied, there is no adequate remedy at law, and mandamus will issue. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 780 (Tex. 2006). A party seeking a writ of mandamus to compel arbitration under the FAA must: (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *See In re AdvancePCS Health, L.P.*, 172 S.W.3d 603, 607 (Tex. 2005) (orig. proceeding) (per curiam).

**B.      Validity of the Arbitration Agreement**

Whether there is a valid and enforceable agreement to arbitrate is a legal question subject to *de novo* review. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Although there is a strong presumption favoring arbitration, that presumption arises only after the party seeking to compel arbitration proves a valid arbitration agreement exists. *Id.* Under both the FAA and the TAA, we apply ordinary state contract law principles in order to decide whether a valid arbitration

agreement exists. *See In re D. Wilson*, 196 S.W.3d at 781 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Once a valid agreement to arbitrate has been established, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcing arbitration. *See In re AdvancePCS*, 172 S.W.3d at 607; *In re Hartigan*, 107 S.W.3d 684, 687-88 (Tex. App.—San Antonio 2003, orig. proceeding [mand. denied]).

Because the trial court did not specify the reason why it denied the motions to compel arbitration, we must consider all of the Huertas' arguments made in the trial court asserting there is not a valid agreement to arbitrate.

### 1. *Do relators have the right to enforce the agreement?*

#### a. **Wells Fargo**

The first issue before the trial court was whether Wells Fargo Bank, N.A. established it is Wells Fargo Bank Texas, N.A., the lender listed on the arbitration agreement. The Huertas argued in the trial court that Wells Fargo Bank, N.A. did not establish it is Wells Fargo Bank Texas, N.A. and that Wells Fargo Bank, N.A. is not entitled to enforce the arbitration agreement. Although the Huertas failed to address this issue in this court, we must consider it because it was an issue upon which the trial court could have based its ruling.

The Huertas' Original Petition and all subsequent petitions in the record name Wells Fargo Bank, N.A. as a defendant and assert that the loan they obtained was from Wells Fargo Bank, N.A. In addition, in a reply to the Huertas' sur-reply before the trial court regarding the motion to compel arbitration, Wells Fargo Bank, N.A. specifically asserted that Wells Fargo Bank, N.A. is the successor by merger to Wells Fargo Bank Texas, N.A. Furthermore, Wells Fargo Bank N.A.

included as an exhibit to the reply a document from the Federal Reserve System National Information Center and a letter from the Comptroller of the Currency, Administrator of National Banks, indicating that Wells Fargo Bank Texas, N.A. was consolidated and the resulting charter is Wells Fargo Bank, N.A. As a result of the foregoing, we conclude that Wells Fargo Bank, N.A. established that Wells Fargo Bank Texas, N.A. was consolidated and resulted in Wells Fargo Bank, N.A., and, therefore, has the right to enforce the agreement.

**b.      Nonsignatories**

In addition to arguing Wells Fargo Bank, N.A. was not entitled to enforce the arbitration agreement, the Huertas claimed that the remaining relators lacked standing to assert any right to enforce the arbitration agreement. Therefore, we must address whether relators America's Servicing Company, Premiere Asset Services, Langley & Banack, Inc., Jones, and Garcia have the right to enforce the arbitration agreement since they were nonsignatories to the arbitration agreement. In support of their argument that they are entitled to compel arbitration under the arbitration agreement, the nonsignatories assert they are agents of a signatory, Wells Fargo Bank.

The burden of establishing the existence of a valid and enforceable arbitration agreement includes proving that the party seeking to compel arbitration was a party to the agreement or had the right to enforce the arbitration agreement. *In re Merrill Lynch Trust Co.*, 123 S.W.3d 549, 545-555 (Tex. App.—San Antonio 2003, orig. proceeding), *mand. granted*, 235 S.W.3d 217 (Tex. 2007) (orig. proceeding) (per curiam). "Federal courts have recognized six theories, arising out of common principles of contract and agency law, that may bind nonsignatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6) third-party beneficiary." *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).

The nonsignatories to an arbitration agreement who are agents of a signatory may be able to invoke an arbitration agreement in some cases. *See In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (holding that "the agents of a signatory may sometimes invoke an arbitration clause even if they themselves are nonsignatories and a claimant is not suing on the contract."); *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (holding that "[w]hen contracting parties agree to arbitrate all disputes 'under or with respect to' a contract . . ., they generally intend to include disputes about their agents'. . . ."). "The scope of an arbitration agreement may be extended to claims against agents of the principal when all the agents' allegedly wrongful acts relate to their behavior as agents of the principal signatory company, and those acts were within the scope of the claims covered by the arbitration provisions for which the principal would be liable." *In re Merrill Lynch*, 123 S.W.3d at 556 (citing *Pritzker v. Merrill Lynch, Inc.*, 7 F.3d 1110, 1121 (3d Cir. 1993)).

The Huertas do not appear, in the trial court or in this court, to dispute that all of the nonsignatory relators were agents of Wells Fargo. To the contrary, the Huertas' Fourth Amended Petition indicates that each of the nonsignatory relators were acting as agents of Wells Fargo:

> America's Servicing is the assumed name for Wells Fargo Home Mortgage, Inc., a California Corporation registered to do business in Texas. America's Servicing was specifically authorized by Wells Fargo to act as its agent in all proceedings and acts against the Plaintiffs complained of in this lawsuit. . . .

> [Langley & Banack] was hired by America's Servicing and/or Wells Fargo as its agent or subagent and acted in furtherance of its principals' interests. . . .

> [Robert Carl Jones] is an employee or representative of Langley & Banack, Inc., and was directly responsible for the acts of Wells Fargo and America's Servicing and the injury of the Plaintiffs. . . .

> Albert Garcia and his agents and his employees invaded the Huertas' privacy. . . . Wells Fargo Bank and/or Premiere Asset Services authorized, controlled, directed, participated in, and/or conspired in these wrongful acts.
>
> Premiere Asset Services an assumed name of Wells Fargo Home Mortgage, A Division of Wells Fargo Bank, N.A. . . .

Because the parties in this court do not dispute that the nonsignatories were acting as agents of Wells Fargo and each of their allegedly wrongful acts relate to their behavior as agents of Wells Fargo, we conclude relators were entitled to enforce the arbitration agreement. Therefore, we hold this was not a proper ground for the trial court to deny the motions to compel arbitration.

### 2. *Was the arbitration agreement discharged in bankruptcy?*

Also before the trial court, was the issue of whether the arbitration agreement was discharged in bankruptcy. The Huertas contend that after the discharge, the Huertas owned the 9.855 acres as if they were bona fide purchasers for value. *See In re Peebles*, 197 B.R. 799, 801 (Bankr. W.D. Pa. 1996) (holding that a bankruptcy trustee has the status of a bona fide purchaser as of the date of bankruptcy). They further assert that "[b]y operation of federal law, the bankruptcy court's discharge order absolved the Huertas from their pre-filing obligations and debts, necessarily including any obligations under the Arbitration Agreement." The Huertas assert that *Green Tree Servicing, L.L.C. v. Fisher* is on point. *See* 162 P.3d 944 (Okla. Civ. App. 2007). However, we do not find *Green Tree Servicing* persuasive.

*Green Tree* involved a lawsuit filed by Green Tree Servicing against Fisher to foreclose on property prior to the conclusion of the bankruptcy proceeding. *Id.* at 945-46. Fisher counterclaimed, alleging Green Tree violated the bankruptcy injunction. *Id.* at 946. Green Tree filed a motion to

compel arbitration. *Id.* at 947. The Oklahoma Court of Appeals determined that Fisher's claims–that Green Tree attempted to collect money or property that was no longer due or in his possession, and to make telephone calls prohibited by the Oklahoma act– were not based upon duties imposed by contract or statute that were brought into play by virtue of the contract. *Id.* at 948. The court further held that "Green Tree's alleged attempt to improperly collect money or property that was no longer due from Fisher or in his possession occurred after the contractual relationship had been terminated by discharge in bankruptcy." *Id.* The court concluded the arbitration agreement was not applicable to Fisher's counterclaim. *Id.*

Contrary to the Huertas' arguments in this court, the court in *Green Tree* did not conclude the arbitration agreement itself was discharged in bankruptcy, but instead, the court held that the counterclaim was not a "dispute[], claim[], or controversy[] arising from or relating to [the] Agreement." *Id.* The Huertas provide no additional case law in support of their assertion that the arbitration agreement was discharged in bankruptcy.

To the contrary, relators argue that an arbitration agreement survives the termination or repudiation of the contract itself; therefore, even if the Deed of Trust and the purported lien on the property were terminated, the arbitration agreement survived. *See Ambulance Billing Sys., Inc. v. Gemini Ambulance Servs., Inc.*, 103 S.W.3d 507, 512-14 (Tex. App.—San Antonio 2003, no pet.) (consolidated interlocutory appeal and orig. proceeding); *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444-45 (Tex. App.—San Antonio 2001, orig. proceeding [mand. denied]); *see also Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 782 (10th Cir. 1998).

Furthermore, relators contend other courts have held that post-discharge, plaintiffs are still required to submit claims to arbitration. *See MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 110 (2d

Cir. 2006); *Bigelow v. Green Tree Fin. Servicing Corp.*, No. CV-99-6644, 2000 WL 33596476, *6 (E.D. Ca. Nov. 30, 2000). In *MBNA*, Hill filed for bankruptcy and his debts were discharged in 2003. *See MBNA Am. Bank, N.A.*, 436 F.3d at 106. During the bankruptcy, Hill filed an adversary proceeding against MBNA, claiming that MBNA violated the automatic stay. *Id.* MBNA moved to compel arbitration based on the credit agreement with regard to the consumer loan, but the motion to compel was denied because the court held that the bankruptcy court was the most appropriate forum because permitting arbitration would seriously jeopardize the bankruptcy proceeding. *Id.* at 107. The Second Circuit reversed and compelled arbitration, concluding that since the bankruptcy had ended, arbitration of the dispute would not jeopardize the bankruptcy proceeding. *Id.* at 108-09. As a result, relators contend this case represents an example of how an arbitration agreement can survive bankruptcy and still be enforced.[5]

We find no support for the Huertas' argument that the arbitration agreement was discharged in bankruptcy. Therefore, we conclude that this was not a proper ground for the trial court to deny the motion to compel arbitration. Because we have concluded that the arbitration agreement was not discharged by bankruptcy, we do not need to reach relators' additional argument that the Huertas were required to file an adversary proceeding in order to challenge Wells Fargo's purported lien.

### 3. Did the arbitration agreement merge into the trustee's deed?

Another issue before the trial court was whether the arbitration agreement merged into the trustee's deed, and, therefore, is unenforceable. In the trial court and in their response to this court, the Huertas argue that, assuming the arbitration agreement survived the discharge in bankruptcy, the

---

[5] *Bigelow* provides a similar example of when a court has compelled arbitration after a claim arose against the secured creditor for acts after bankruptcy was filed, but before the debt was discharged. *Bigelow*, 2000 WL 33596476 at *6.

arbitration agreement is invalid/unenforceable because the Deed of Trust, that referenced and incorporated the arbitration agreement, merged into the trustee's deed following the foreclosure sale. *See Fed. Land Bank of Hous. v. Brooks*, 124 S.W.2d 161, 163 (Tex. Civ. App.—Beaumont 1938), *rev'd on other grounds*, 143 S.W.2d 928 (Tex. 1940) (holding that in a trespass to try title case, the deed of trust merged into its title by the deed made to it by its trustee); *see also Alvarado v. Bolton*, 749 S.W.2d 47, 48 (Tex. 1988) (holding that when a deed is delivered and accepted as performance of a contract to convey, the contract is merged in the deed). However, we do not find these cases persuasive because neither of them represent an example of a deed of trust merging into a trustee's deed following a foreclosure sale.

We are not aware of any authority, nor do the Huertas cite any authority for the proposition that an arbitration agreement is invalid or unenforceable because the deed of trust merged into the trustee's deed after the foreclosure sale. To the contrary, this court has previously considered a petition for writ of mandamus that sought to enforce an arbitration agreement after the property subject to a lien in a deed of trust was foreclosed upon. *See In re Centex Home Equity Co.*, No. 04-04-00585-CV, 2004 WL 2945702, *4-5 (Tex. App.—San Antonio 2004, orig. proceeding) (mem. op.). The issue before the court in *In re Centex* was whether Centex had waived arbitration after waiting fifteen months to compel arbitration. *Id.* at *4. We acknowledge that in *In re Centex* the issue before this court was not whether a deed of trust merged into the trustee's deed following the foreclosure, eliminating the agreement to arbitrate. *Id.* However, *In re Centex* represents an example of the enforcement of an arbitration agreement following foreclosure of the property. *Id.*

Relators contend the arbitration agreement created obligations independent of and collateral to the Deed of Trust, and therefore, the agreement to arbitrate remained after the foreclosure sale and

the trustee's deed.[6] We agree. In addition, the arbitration agreement specifically provides that "[t]he provisions of this Arbitration Program shall survive any termination, amendment, or expiration of the Documents or relationships of the parties." Therefore, we find the Huertas' arguments that the Deed of Trust merged into the trustee's deed and extinguished any agreement to arbitrate unpersuasive. As a result of the foregoing, we conclude this was not a proper ground for the trial court to deny the motion to compel arbitration.

### 4.    *Are the minor children bound by the agreement?*

Another issue before the trial court was whether the minor children were bound by the agreement. The Huertas argued in the trial court that because the minor children's claims have nothing to do with a contract, the minor children are not bound by the arbitration agreement. The Huertas argue their claims all arise because there was no contract on the 9.855 acres and none of their claims are predicated upon any contractual right or the violation of any contractual duty on the part of Wells Fargo and/or its agents.

However, "a nonparty may be compelled to arbitrate 'if it seeks, through the claim, to derive a direct benefit from the contract containing the arbitration provisions.'" *In re Weekley Homes, L.P.*, 180 S.W.3d at 131 (internal citations omitted). The Supreme Court went on to explain that:

> Under both Texas and federal law, whether a claim seeks a direct
> benefit from a contract containing an arbitration clause turns on the

---

[6] Relators further contend the Huertas' merger argument is easily disposed of by *Stanford Development Corp. v. Stanford Condominium Owners Ass'n*, 285 S.W.3d 45, 51-52 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In *Stanford*, the court of appeals held that the arbitration agreement contained in an earnest money contract did not merge into the deed. *Id.* at 52. However, as the Huertas point out, the issue before the court of appeals in *Stanford* was whether an arbitration clause in an earnest money contract merged into a deed, not whether an arbitration clause in a deed of trust merges into a trustee's deed in a foreclosure context. *Id.*

> substance of the claim, not artful pleading. Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract *or must be determined by reference to it.*

*Id.* at 132 (emphasis added).

Relators assert the Huertas' claims against them are based on relators' enforcement of the loan documents, contending that "but for the Loan Documents, there would have been no dispute and neither the Huertas nor their minor children would have any claims." Relators further contend that as the Huertas make it clear in their pleadings, both in the trial court and in this court, the Deed of Trust between the Huertas and Wells Fargo defines the rights of the parties and, as the Huertas claim, establishes Wells Fargo had no rights to the property owned by the Huertas.

The Huertas have asserted in the trial court, among other claims, violations of the Texas Debt Collection Act, trespass, theft, invasion of privacy, wrongful post-foreclosure eviction, and they have sought declaratory relief. The Huertas' Fourth Amended Petition specifically requests a declaratory judgment "that Defendant Wells Fargo has no lien or other rights in and to the 9.855 Acres, and has no rights to pursue any deficiency against the Plaintiffs for any of the debt discharged in bankruptcy."

Because the Huertas' Fourth Amended Petition specifically requests a declaratory judgment that Wells Fargo has no lien or other rights to the 9.855 acres, and because the Huertas and the minor children have asserted other claims which will likely require a determination as to the validity of the lien by reference to the contract, the minor children's claims must be sent to arbitration along with the Huertas' claims. *See In re Weekley Homes, L.P.*, 180 S.W.3d at 131. As a result, we conclude that this was not a proper basis to deny the motions to compel arbitration as to the minor children.

#### 5. *Is Margarita Huerta bound by the agreement?*

Also before the trial court, was whether Margarita Huerta was bound by the arbitration agreement because she signed the agreement "pro forma." The Huertas contend that because Margarita Huerta signed the deed and the arbitration agreement "pro forma" only, she expressly reserved her right to challenge the substantive provisions of the agreement. However, we do not need to reach this issue because just as the minor children are bound by the agreement for the reasons explained above, so is Margarita Huerta.

### C. Are the Huertas' claims within the scope of the agreement?

Having determined that a valid arbitration agreement exists between the parties, we next address whether the claims asserted are within the scope of the agreement. *See In re AdvancePCS*, 172 S.W.3d at 607. As previously mentioned, the arbitration agreement provides that a "dispute" includes in part, "any dispute, claim or controversy of any kind, whether in contract or in tort, legal or equitable, now existing or hereafter arising, relating in any way to this Note or Loan Documents or any related agreement incorporating this Arbitration Program (the "Documents")."

The Huertas asserted in the trial court and in this court that their claims do not fall within the scope of the arbitration agreement because the tortious acts of the relators were extraneous to any note, loan document, or lending function. The Huertas further contend that at the time the tortious acts occurred, Wells Fargo had no lien rights to the 9.855 acres and "[f]or all practical purposes Wells Fargo and the Huertas were strangers when Wells Fargo ousted the Huertas from their 9.855 acres."

On the other hand, relators assert the arbitration agreement specifically requires the Huertas to submit "any" dispute relating to the note and loan documents and the property located at HC 1

Box 36, Concepcion, Texas 78349.  Therefore, relators contend the scope of the arbitration agreement would therefore necessarily include: (a) whether the Deed of Trust was invalid; (b) whether relators violated the debt collection statutes by attempting to collect the debt secured by the Deed of Trust; and (c) whether Wells Fargo wrongfully evicted the Huertas from the property.  In order to further support their argument that the Huertas' claims fall within the scope of the agreement, relators contend the Huertas' lawsuit centers on the validity of the lien in the Deed of Trust because the basis of the Huertas' claims of wrongful collection and eviction are based on the alleged invalidity of the lien.  Relators contend their argument is further supported by the  Huertas' request for a declaratory judgment that Wells Fargo's purported lien was invalid.

We agree with relators that the Huertas' claims fall within the scope of the arbitration agreement.   The Huertas seek a declaratory judgment that the purported lien is invalid, which is a claim that clearly "relates . . . to the Note or Loan Documents."  Based on the foregoing, we conclude that because the Huertas' claims fall within the scope of the arbitration agreement, this was not an appropriate basis for the trial court to deny the motions to compel arbitration.

**D.      Did relators waive their right to arbitration?**

Next we turn to whether relators waived their right to arbitration.  A party waives arbitration by substantially invoking the judicial process to the other party's detriment.  *Perry Homes v. Cull*, 258 S.W.3d 580, 589-90 (Tex. 2008).  "Due to the strong presumption against waiver of arbitration, this hurdle is a high one."  *Id.* at 590.  Up until *Perry*, the Texas Supreme Court had never found such a waiver.  *Id.*  The Court took the federal court approach to waiver by adopting the "totality of the circumstances" analysis.  *Id.* at 590-91.  The Court acknowledged that like federal courts, this Court has considered factors such as:

> (1) when the movant knew of the arbitration clause;
> (2) how much discovery has been conducted;
> (3) who initiated the discovery;
> (4) whether it related to the merits rather than arbitrability or standing;
> (5) how much of it would be useful in arbitration; and
> (6) whether the movant sought judgment on the merits.

*Id.* at 591-92.

The Court further held that "a party who enjoys substantial direct benefits by gaining an advantage in the pretrial litigation process should be barred from turning around and seeking arbitration with the spoils." *Id.* at 593. The Court concluded that "in close cases, the 'strong presumption against waiver' should govern." *Id.* (quoting *In re D. Wilson*, 196 S.W.3d at 783).

Whether a party has waived its right to arbitration is a question of law that we review *de novo*, giving no deference to the trial court's ruling. *Id.* at 598.

**1.  *Substantial Invocation of the Judicial Process:***

The Huertas treat all relators as one and contend relators waived their right to arbitration because the following has taken place: (1) extensive discovery has been conducted; (2) relators presumably knew all along there was an arbitration agreement; (3) an oral deposition was noticed; (4) a motion for summary judgment was filed by Wells Fargo, Premiere Asset Services, and America's Servicing Co.; (5) a cross-claim was  filed by Garcia against Wells Fargo and Premiere Asset Services; (6) relators participated in six depositions; (7) the Huertas' have incurred approximately $200,000 in attorneys' fees; and (8) relators agreed to a docket control order and did not oppose a trial setting.

In their response to the petition for writ of mandamus, the Huertas provide a summary of all of the written discovery in the case.  However, a significant amount of that discovery was conducted

by the Huertas themselves. As the Supreme Court pointed out in *Perry* when comparing the case to *Vesta*, "while the party opposing arbitration in Vesta allegedly incurred more than $200,000 in expenses, most of that was incurred in getting discovery rather than providing it; a party who requests lots of discovery is not prejudiced by getting it and taking it to arbitration in the same way that a party who produces lots of discovery outside the stricter discovery limits in arbitration. *Perry*, 258 S.W.3d at 598 (citing *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 764 (Tex. 2006)).

We analyze each individual relator's acts based on the totality of the circumstances to determine whether they waived their right to arbitration by substantially invoking the judicial process. It is clear from the record that relators Premiere Asset Services, America's Servicing Company, and Garcia did not waive their right to compel arbitration. Premiere Asset Services did not file an answer to the suit until December of 2008; America's Servicing Company did not file an answer to the suit until October of 2008; and Garcia did not file an answer to the suit until November of 2008. Shortly after the first motion to compel arbitration was filed by Langley & Banack, Inc. and Jones, Wells Fargo Bank, N.A., America's Servicing Company, and Premiere Asset Services filed a joint motion to compel arbitration on January 30, 2009. Garcia filed a similar motion to compel arbitration on February 3, 2009. In addition, according to the parties, Premiere Asset Services has only propounded requests for disclosure on the Huertas, filed a motion for summary judgment jointly with Wells Fargo and America's Servicing Company, agreed to a docket control order, and did not oppose a trial setting. America's Servicing Company's only participation in the lawsuit is filing a joint motion for summary judgment along with Wells Fargo and Premiere Asset Services, agreeing to a docket control order, and not opposing a trial setting. Garcia has only filed a cross-claim against Wells Fargo and Premiere Asset Services, agreed to a docket control order, and did not oppose a trial

setting. As a result of the foregoing limited activities of the parties, we conclude the Huertas did not establish that Premiere Asset Services, America's Servicing Company, and Garcia waived their right to arbitration by substantially invoking the judicial process.

We now turn to whether the remaining relators Wells Fargo, Langley & Banack, Inc., and Jones waived their right to arbitration. Langley & Banack was the first defendant sued, and it answered on February 15, 2008 and filed its motion to compel arbitration on January 22, 2009; Wells Fargo answered the suit on April 18, 2008, and filed its motion to compel arbitration on January 30, 2009; and, Jones answered the suit on July 1, 2008, and filed his motion to compel arbitration jointly with Langley & Banack, Inc.

Wells Fargo has propounded the following discovery and motion: (1) requests for disclosure propounded on Edward Huerta, Margarita Huerta, and the three minor children; (2) first set of requests for production propounded on Edward Huerta and Margarita Huerta, individually; (3) first set of interrogatories propounded on Edward Huerta and Margarita Huerta, individually; (4) depositions on written questions propounded to a number of third parties; and (5) motion for summary judgment jointly with Premiere Asset Services and America's Servicing Company regarding exemplary damages. According to the record, Langley & Banack has only propounded basic discovery requests on the Huertas. As to Jones, there is nothing in the record indicating that he has conducted any discovery individually.

In *Vesta*, the Supreme Court held that incurring more than $200,000 in expenses and fees, propounding standard requests for disclosure, noticing a total of four depositions, and each defendant propounding requests for production, fell short of overcoming the presumption against waiver of a right compel arbitration. *See In re Vesta*, 192 S.W.3d at 764. Unlike the situation in *Perry* when

the Texas Supreme Court determined there was waiver, the case at hand is not one in which the parties have waited until the eve of trial after all or the majority of the discovery has been completed. *Perry*, 258 S.W.3d at 595-596. The parties have indicated that the trial is not until October 2009, and there is remaining discovery that needs to be conducted, including deposing the Huertas. As a result, we conclude that Wells Fargo, Langley & Banack, and Jones have not substantially invoked the judicial process to the extent that it overcomes the presumption against waiver of the right to compel arbitration.

Because we have found that the Huertas did not meet their burden of proving relators substantially invoked the judicial process, we do not need to consider whether the Huertas were prejudiced. As a result, we conclude that waiver of the right to arbitration was not a proper basis for the trial court to deny the motions to compel arbitration.

**E.    Failure to Exercise Right to Arbitration Within a "Reasonable Time"**

The final issue before the trial court was whether relators were required to make a showing that they exercised their contractual right to arbitration within a "reasonable time" as required by the arbitration agreement. The Huertas rely on the following provision in the arbitration agreement to support their contention that the arbitration agreement requires relators to demand arbitration at a reasonable time:

> <u>Abritrators; Preservation of Remedies</u>. . . .The involvement of any party in judicial or other proceedings as plaintiff or in any other capacity shall not impair such party's right to demand arbitration at any reasonable time.

The Huertas further assert that the burden of establishing compliance with the requirement that arbitration be demanded within a "reasonable time" is on the relators and is a condition precedent to seeking to compel arbitration.

We conclude that rather than a condition precedent that must be met prior to seeking to compel arbitration, the language relied upon by the Huertas preserves a party's remedies by providing in part that participation in judicial proceedings will not impair that party's right to demand arbitration at any reasonable time. In addition, the arbitration agreement clearly indicates in the section entitled "Agreement For Binding Arbitration," that "[a]rbitration may be demanded at any time, and may be compelled by summary proceedings in Court." We conclude this was not a proper basis for the trial court to deny the motions to compel arbitration.

## CONCLUSION

Based on the foregoing, we conclude the trial court clearly abused its discretion in denying relators' motions to compel arbitration. Accordingly, we conditionally grant the petition for writ of mandamus. The writ will issue only if the trial court fails to within 10 days (1) withdraw its March 27, 2009 order denying relators' motions to compel arbitration, and (2) issue an order staying the underlying cause pending arbitration of the case. In addition, the stay imposed by this court's order of April 16, 2009 is lifted.

Rebecca Simmons, Justice