

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00078-CV

**SAN ANTONIO EYE CENTER, P.A.** d/b/a Harris Optical; South Texas Total Eye Care, P.A.;
Albert Castillo; and Sanford Roberts II, M.D.,
Appellants/Cross-Appellees

v.

**VISION ASSOCIATES OF SOUTH TEXAS P.A.** d/b/a South Texas Eye Institute; and Lisa
Marten, M.D.,
Appellees/Cross-Appellants

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2020CI21328
Honorable John D. Gabriel Jr., Judge Presiding

Opinion by:      Lori I. Valenzuela, Justice

Sitting:         Patricia O. Alvarez, Justice
                 Irene Rios, Justice
                 Lori I. Valenzuela, Justice

Delivered and Filed: August 31, 2022

REVERSED AND REMANDED

In this interlocutory appeal, the parties dispute whether an arbitration agreement governs appellees' underlying claims and, if so, whether the appellants waived their right to compel arbitration. Although the trial court determined the matter is subject to arbitration, it found appellants waived the right to compel arbitration. We reverse and remand the cause to the trial court for further proceedings consistent with this opinion.

**BACKGROUND**

Beginning in 2000, appellant/cross-appellee South Texas Total Eye Care, P.A. ("STTEC") managed a network of optical health-care providers under healthcare agreements with health insurance providers. The network was governed by a contract for Independent Physician Participation (the "IPP Agreement"). The primary purpose of the IPP Agreement was to create a referral group or network of physicians and their practices. On March 20, 2013, STTEC and appellees/cross-appellants executed the IPP Agreement. Among other obligations, the IPP Agreement governed the patient referral arrangement between appellees and STTEC.

Another obligation was a confidentiality provision prohibiting certain uses and the disclosure of proprietary information. Appellees allege that, despite this confidentiality provision in the IPP Agreement, appellant Albert Castillo (the Executive Director of STTEC and Administrator/CEO of appellant San Antonio Eye Center, P.A. ("SAEC")) improperly obtained appellees' patient list and used the list for SAEC's benefit by disseminating it to the physicians who were part of the STTEC referral group without Plaintiffs' permission.

The IPP Agreement also contained an arbitration provision. In relevant part, the arbitration provision required:

> In the event of a controversy or claim arising out of or relating to this [IPP] Agreement, or the breach thereof, said controversy or claims shall first be submitted to binding arbitration in accordance with the rules and procedures of the National Health Lawyers Dispute Resolution Panel or the commercial arbitration rules of the American Arbitration Association . . .

Appellees allege that after the original founder of SAEC and STTEC retired, Dr. Sanford Roberts, II assumed control of both entities. According to appellees, Roberts was antagonistic and aggressive towards them; refused to provide referral lists; and improperly refused to share information upon request. Appellees further allege Roberts stopped providing them reports,

invoices, and other details regarding referrals, which had previously been sent either weekly or monthly. Appellees allege they were increasingly concerned appellants were using STTEC to improperly funnel patient referrals and appellees' current patients to SAEC. In December 2019, STTEC terminated the IPP Agreement with appellees.

On or about January 1, 2009, SAEC and appellee Vision Associates of South Texas P.A. ("VAST") entered into a general partnership, IDOK Optical, to sell glasses and other eyewear. The relationship between IDOK Optical, SAEC, and VAST was apparently governed by the terms of an agreement known as the "IDOK Agreement." The IDOK Agreement apparently leased 400 square feet of VAST's lease space for the purpose of selling glasses and other eyewear. According to appellees, the IDOK Agreement created a partnership; authorized both SAEC and VAST to review the partnership's books and records; and vested SAEC with management and financial authority. Pursuant to these alleged requirements, appellees demanded an accounting from SAEC; however, appellees allege SAEC failed to comply with its accounting obligations under the IDOK Agreement. In December 2019, the IDOK Agreement was terminated.

On November 2, 2020, appellees filed their original petition. Appellees' allegations can be broken down into two categories relevant to our analysis. In the first category, appellees assert factual allegations and claims relating to patient referrals; specifically: (1) appellants breached the IPP Contract; (2) appellants fraudulently induced appellees to enter into the IPP Contract and fraudulently diverted and stole referrals and patients; (3) appellants made negligent misrepresentations in diverting referrals and patients for their own benefit; (4) appellants tortiously interfered with appellees' prospective business relationships with patients by usurping referrals for their own benefit; and (5) appellants breached fiduciary duties by diverting referrals and patients away from appellees. In the second category of allegations, appellees assert they are entitled to a

full and accurate accounting of STTEC and SAEC "related to the various agreements and relationships."

The parties subsequently entered an agreed scheduling order and discovery control plan setting trial for May 2, 2022. The parties exchanged written discovery and filed discovery-related motions.

On January 5, 2022, appellants filed a motion to compel arbitration based primarily on the arbitration clause in the IPP Agreement. Appellants also moved to compel arbitration based on what the parties refer to as the "WellMed Agreement." The WellMed Agreement was purportedly[1] entered between WellMed Networks, Inc. and STTEC and later joined by appellees. On January 27, 2022, appellees filed a written response and objection to the motion to compel arbitration. On January 28, 2022, appellants filed a reply.

Also on January 28, 2022, the trial court heard appellants' motion to compel arbitration. At the hearing, appellants asserted all of appellees' claims (including the accounting claim arising from the IDOK Agreement) were subject to the arbitration under the IPP Agreement because the IPP Agreement was the foundation of the parties' "subsequent relationship."

On February 8, 2022, the trial court signed a written order denying the motion to compel arbitration. The trial court found "the matter is subject to arbitration," but concluded the motion should be denied because appellants "waived their right to compel arbitration due to the amount of litigation undertaken and due to the pending trial date." Appellants appealed the denial of the motion, and appellees cross-appealed the trial court's determination that the matter was subject to arbitration.

---

[1] Appellants did not include an executed version of the agreement in the record.

**STANDARD OF REVIEW**

A party seeking to compel arbitration must establish two elements: (1) the existence of a valid arbitration agreement and (2) that the disputed claims fall within the scope of that agreement. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 284 (Tex. 2021).

Once the party seeking to compel arbitration establishes the first element, "a 'strong presumption favoring arbitration arises' and we resolve doubts as to the agreement's scope in favor of arbitration." *Id.* at 284 (quoting *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013)). Whether the claims in dispute fall within the scope of a valid arbitration agreement is a question of law we review de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). In deciding an arbitration agreement's scope, we focus on the factual allegations and not the causes of action asserted. *Id.*

We review the defense of waiver by litigation conduct de novo. *Perry Homes v. Cull*, 258 S.W.3d 580, 587, 598 (Tex. 2008). Our review looks to the "totality of the circumstances" to determine waiver on a "case-by-case basis." *Id.* at 591. Waiver is a question of law for the court on which we do not defer to the trial court. *Id.* at 598.

**EXISTENCE AND SCOPE OF ARBITRATION AGREEMENT**

As the parties seeking to compel arbitration, appellants bore the burden of establishing the existence of a valid arbitration agreement and that the disputed claims fall within the scope of that agreement. *Wagner*, 627 S.W.3d at 284. Three agreements are potentially implicated.

***Existence of Arbitration Agreement***

We can quickly dispose of two of the agreements. Appellants failed to introduce into evidence an executed copy of the WellMed Agreement establishing a right to compel appellees to arbitrate claims under it. Moreover, on appeal, appellants concede:

> The record establishes that [appellants] predicated their motion to compel arbitration on the arbitration provision of the IPP Contract. Furthermore, the reporter's record is devoid of any attempt of the [appellants] to argue or assert that the WellMed [Agreement]'s arbitration provision serves as the basis for the relief requested from the trial court. As such, the trial court's finding in favor of arbitrability was not predicated upon the WellMed [Agreement]."[2]

The parties do not assert the IDOK Agreement contains an arbitration provision. Appellants thus cannot establish a right to compel appellees to arbitrate disputes arising exclusively under the IDOK Agreement—i.e., accounting with respect to eyewear retail sales.

Absent either of these agreements, only the IPP Agreement remains. It is not disputed on appeal that appellants satisfied their initial burden of proving the existence of a valid arbitration agreement under the IPP Agreement. In their motion to compel arbitration, appellants attached a copy of the IPP Agreement executed by appellees and STTEC.[3] The IPP Agreement contains an express arbitration provision requiring controversies and claims arising out of or relating to the IPP Agreement to be submitted to arbitration. We accordingly hold appellants established the existence of a valid arbitration agreement—the IPP Agreement.

### Scope of Arbitration Agreement

Appellants having established the first element, "a 'strong presumption favoring arbitration arises' and we resolve doubts as to the agreement's scope in favor of arbitration." *Wagner*, 627

---

[2] It appears from the record and the parties' concessions on appeal that the purpose of including the WellMed Agreement in the motion to compel arbitration was not to establish a second contractual basis to compel arbitration. Rather, appellants assert the WellMed Agreement exists to "further illustrate the [Federal Arbitration Act's] application to participants in the IPP Contract" by demonstrating the IPP Contract required appellees to accept federal funds—establishing the interstate commerce element required for the application of the FAA. *See* 9 U.S.C. §§ 1–2; *see also In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (holding evidence of Medicare payments made to one party of an arbitration agreement is sufficient to establish the agreement affects interstate commerce).

[3] Although it was disputed below whether SAEC, Castillo, and Roberts could compel arbitration as nonsignatories, that argument was abandoned in appellees' cross-appeal: With respect to the first prong, appellees only contend appellants failed to satisfy their burden with respect to the WellMed Agreement. *See In re Wells Fargo Bank, N.A.*, 300 S.W.3d 818, 825 (Tex. App.—San Antonio 2009, no pet.) ("Because the parties in this court do not dispute that the nonsignatories were acting as agents of Wells Fargo and each of their allegedly wrongful acts relate to their behavior as agents of Wells Fargo, we conclude relators were entitled to enforce the arbitration agreement.").

S.W.3d at 284. In assessing the scope of the arbitration provisions, we focus on the factual allegations and not the causes of action asserted. *Henry*, 551 S.W.3d at 115. We apply a common-sense examination of the underlying claims to determine if they come within the scope of the arbitration clause. *Garg v. Pham*, 485 S.W.3d 91, 102–03 (Tex. App.—Houston [14th Dist.] 2015, no pet).

From our review of the pleadings, we discern two categories of claims from appellees' pleadings: (1) claims relating to patient referrals; and (2) accounting claims purportedly arising under "various agreements."

*Patient Referrals*

The IPP Agreement governed the referral relationship between STTEC and appellees. Applying the strong presumption favoring arbitration and upon de novo review of appellees' pleadings, we hold the first category of claims—those involving patient referrals—fall within the scope of the broad arbitration clause in the IPP Agreement requiring arbitration "[i]n the event of a controversy or claim arising out of or relating to this [IPP] Agreement, or the breach thereof." *See Wagner*, 627 S.W.3d at 284 (describing as "broad" a clause applying to "any disputes" and resolving any doubts in favor of arbitration); *Perry Homes*, 258 S.W.3d at 585 n.4 (describing as "broad" an arbitration clause providing for arbitration of "[a]ny unresolved dispute"). We overrule appellees arguments to the contrary; *Henry*, 551 S.W.3d at 115 (noting clause applying to all "disputes" is "very broad and encompasses more than claims 'based solely on rights originating exclusively from the contract.'").[4]

---

[4] We reject appellees claims that appellants waived the right to establish scope by failing to provide a detailed factual analysis of appellees' pleadings. Appellants attached a copy of appellees' pleadings to their motion to compel, and this court conducts a de novo review of the motion based on such pleadings.

*IDOK Accounting Claim*

Appellants were required to establish the facts appellees allege in support of their claims arising from the IDOK Agreement either "touch matters, have a significant relationship to, are inextricably enmeshed with, or are factually intertwined with the contract containing the arbitration agreement." *Amateur Ath. Union of the United States, Inc. v. Bray*, 499 S.W.3d 96, 103 (Tex. App.—San Antonio 2016, no pet.) (citing *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011)). To fall within the scope of an arbitration clause a claim must be brought on the contract and liability must arise solely from the contract or by reference to it. *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005).

The IDOK Agreement apparently governed a partnership regarding retail eyewear sales and a leasing arrangement for the same. We discern nothing from the pleadings or from appellants' arguments and evidence indicating the accounting claim arising under the IDOK Agreement touches matters, has a significant relationship to, is inextricably enmeshed with, or is factually intertwined with the IPP Agreement. Moreover, the IDOK accounting claim could certainly be brought independently without reference to the IPP Agreement at all. *See id.* ("Claims must be brought on the contract (and arbitrated) if liability arises solely from the contract or must be determined by reference to it."). We accordingly hold appellees accounting claims under the IDOK Agreement are not subject to arbitration under the IPP Agreement.

## WAIVER OF RIGHT TO ARBITRATE

Appellees assert appellants both expressly and impliedly waived their right to compel arbitration. We take each argument in turn.

### Express Waiver

Appellees first assert appellants expressly waived their right to arbitrate by signing a docket control order containing a trial setting. We disagree. Absent express language in the docket control

order disclaiming a right to arbitrate, the docket control order itself cannot constitute a basis for an express waiver. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015) ("Although the acts of requesting and then agreeing to a new trial date could be inconsistent with an intent to exercise the right to arbitrate, they do not constitute an express waiver of that right."); *see also Sofola v. Aetna Health, Inc.*, No. 01-15-00387-CV, 2016 WL 67196, at \*5 (Tex. App.—Houston [1st Dist.] Jan. 5, 2016, no pet.) ("Requesting a trial date or seeking new docket control dates does not constitute an express waiver of arbitration rights."). Here, the docket control order does not contain any express language relinquishing a right to arbitration. We therefore overrule appellees' argument to the contrary.

### *Implied Waiver*

Appellees next assert appellants impliedly waived their right to arbitrate by substantially invoking the litigation process. A party's substantial invocation of the judicial process may result in waiver of a right to arbitrate. *See Perry Homes*, 258 S.W.3d at 589–90. But "[d]ue to the strong presumption against waiver of arbitration, this hurdle is a high one." *Id.* We look to the totality of the circumstances to decide waiver on a case-by-case basis. *Id.* "And in close cases, the 'strong presumption against waiver' should govern." *Id.* at 593. "Implying waiver from a party's actions is appropriate only if the facts demonstrate that the party seeking to enforce arbitration intended to waive its arbitration right." *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996).

Factors for our consideration include (1) how long the party moving to compel arbitration waited to do so; (2) how much of the movant's pretrial activity related to the merits rather than arbitrability or jurisdiction; (3) who initiated discovery; (4) how much discovery the movant conducted before moving to compel arbitration, and whether the movant's discovery related to the merits rather than arbitrability or standing; (5) how much of the discovery conducted would be useful in arbitration; (6) what discovery would be unavailable in arbitration; (7) whether the

movant asserted affirmative claims for relief in court; (8) whether the movant requested the court to dispose of claims on the merits; (9) the amount of time and expense the parties have committed to the litigation; (10) whether activity in court would be duplicated in arbitration; and (11) when the case was to be tried. *G.T. Leach Builders*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 590–91.

Appellees, who bore the burden of proof on their waiver defense, assert appellants substantially participated in the litigation process by: (1) initiating written discovery; (2) responding to written discovery; (3) producing over 40,000 pages of documents; (4) sending two conferral letters to appellees discussing purported deficiencies in their production of documents; (5) entering into an agreed docket control order and setting a trial date; and (6) participating in a phone call with appellant's counsel to confer on appellee's motion to compel discovery.

With respect to the issuance of written discovery, appellants included a request for disclosure in their answer. On December 15, 2020, appellants issued a first set of requests for production and interrogatories to appellees, and on January 14, 2021, appellants responded to a first set of written discovery requests issued by appellees. The parties thereafter conferred on alleged discovery deficiencies, culminating in appellees filing their first motion to compel responses to discovery on December 2, 2021—just shy of a year of their receipt of responses and nearly half a year after their June 28, 2021 conferral. In the interim, appellants filed motions to quash certain third-party discovery requests sought by appellees, which were automatically stayed by operation of law. While the parties' written discovery goes to the merits of the case, a thorough review of the record reflects the parties undertook very few pretrial activities prior to appellants filing their motion to compel arbitration.

Nevertheless, appellees posit the exchange of over 40,000 pages of production is so substantial as to constitute waiver. Although appellees introduced an affidavit indicating "over 40,000 pages of production have been produced between the parties," appellees did not meet their burden of giving this number any context. *See Perry Homes*, 258 S.W.3d at 593 ("How much litigation conduct will be 'substantial' depends very much on the context; three or four depositions may be all the discovery needed in one case, but purely preliminary in another."). Absent this vital context, we simply cannot weigh the value of what 40,000 pages means in the context of this case. There is also nothing indicating the exchanged documents could not be used in an arbitration proceeding or that the parties' efforts would have to be duplicated in arbitration.

Appellees initiated this lawsuit on November 2, 2020. *See Perry Homes*, 258 S.W.3d at 591 (noting that one factor is whether party seeking arbitration was plaintiff who chose to file suit or defendant responding to suit filed against it). With respect to delay, slightly over thirteen months of delay elapsed between appellants' November 30, 2020 answer and January 5, 2022 motion to compel arbitration. While the length of delay is unfortunate, we give the passage of time minimal weight given the parties did little to develop the case during that period. Appellants also did not assert counterclaims against appellees and did not seek disposition on the merits. *See Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 575 (Tex. 2014) (identifying "whether the movant sought disposition on the merits" as a "key factor"). Nor did the parties seek to depose any of the witnesses, of which there are at least three among the named parties alone.

After reviewing the record under the totality of the circumstances—and holding appellees to their heavy burden to establish implied waiver—we hold appellants did not substantially invoke the litigation process. We need not address prejudice. *See* TEX. R. CIV. P. 47.1. We sustain appellants' sole issue.

## CONCLUSION

Pursuant to the IPP Agreement, appellants established a right to compel appellees to arbitrate (1) claims relating to patient referrals and (2) accounting claims arising out of or relating to the IPP Agreement. Appellants are not entitled to compel appellees to arbitrate the accounting claim arising under the IDOK Agreement. Because we find appellants did not substantially invoke the litigation process, appellants did not waive their right to compel arbitration. The trial court's judgment is reversed, and we remand the cause to the trial court for further proceedings consistent with this opinion.

Lori I. Valenzuela, Justice