. Curtis ROBERTS, Appellant,

v.

**CITY OF CORPUS CHRISTI, Appellee.**

No. 13–86–572–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 30, 1987.
Rehearing Denied Feb. 4, 1988.

Phillip M. Westergren, Corpus Christi, for appellant.

Karen A. L. Barratt, Corpus Christi, for appellee.

Before NYE, C.J., and DORSEY and KENNEDY, JJ.

## OPINION

DORSEY, Justice.

Retired Corpus Christi Police Officer Curtis Roberts appeals the summary judgment granted to the City of Corpus Christi in his suit to collect overtime pay. The City moved for summary judgment on the sole ground that Roberts had failed to utilize the grievance procedure provided in the collective bargaining agreement between the City and the police officers' association,

preventing Roberts from pursuing the claim in district court. The trial court granted the motion. We reverse and remand for trial.

The summary judgment evidence, consisting of interrogatories and Roberts' deposition, reveals that Roberts was a police officer employed by the City of Corpus Christi until his retirement in 1985. During the period that he alleges he worked overtime, he was a member of the Corpus Christi Police Officers' Association. As a member, he was subject to collective bargaining agreements between the Association and the City.

The collective bargaining agreements provide for a grievance procedure, Article VII, which consists of six successive steps to be taken by an aggrieved employee, as well as a timetable for each step. The six steps begin with informal discussions with the employee's immediate supervisor and progress through written complaints to various levels of the police department. The last step involves a written complaint to the city manager. Either the City or the employee may then voluntarily seek binding arbitration. If arbitration is not mutually chosen, an action may be brought in district court.

In his second point of error, Roberts maintains that the summary judgment is in error because there is no requirement that the grievance procedure be utilized as a prerequisite to filing suit, and because paragraph B of Article VII provides: "Association Representation. A grievance *may* be brought under this procedure by one or more aggrieved employees with or without an Association representative." [1] [Emphasis added.]

■ There is no express language in the collective bargaining agreements wherein the employee waives his right to litigate rather than progress through the contractual grievance procedure. However, an employee generally must exhaust the grievance remedies provided for in a collective bargaining agreement or other con-

1. The 1983 contract further provides, "or by the Association itself in cases where the subject of the grievance is an on-going practice by the City which affects the bargaining unit as a whole."

tract before bringing suit. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); *see also Thompson v. Monsanto*, 559 S.W.2d 873, 874 (Tex.Civ.App.—Houston [14th Dist.] 1977, no writ); *Duckstein v. General Dynamics Corp.*, 499 S.W.2d 907 (Tex.Civ. App.—Fort Worth 1973, writ ref'd n.r.e.).[2] Exhaustion of remedies is generally required because, according to the United States Supreme Court, "A rule that permitted an individual to overstep available grievance procedures would cause arbitration to lose most of its effectiveness." *Maddox*, 379 U.S. at 652–53, 85 S.Ct. at 616–17. Although not binding here since it interpreted federal law, *Maddox* is highly persuasive authority. Moreover, although the contract does not state that the grievance procedure is the exclusive remedy, "Step 6" of the procedure provides that an employee may request to have an unresolved grievance submitted to binding arbitration, or, with the police association's approval, appeal most unresolved grievances directly to a state district court. This indicates a comprehensive plan to resolve all disputes by first attempting an administrative solution before resort to the courts is had.

We also disagree with Roberts' contention that the permissive language of Article VII renders the grievance procedure nonmandatory. The language on which he relies means that an aggrieved employee has the option of bringing a grievance alone or with a police association representative. *See Maddox*, 379 U.S. at 658–59, 85 S.Ct. at 619–20 (use of permissive "may" does not alone indicate that grievance procedures are not mandatory, and "[a]ny doubts must be resolved against" a permissive interpretation [interpreting federal labor law]).

We overrule Roberts' second point of error.

By his first point of error, Roberts contends a material fact issue exists precluding the granting of summary judgment. He argues that he was justified in not following the grievance procedure because he feared retaliation from his supervisors if he did so.

Federal courts have found exceptions to the general requirement that an employee must exhaust his or her contractual remedies before resort to the courts is had, including: (1) a showing of irreparable harm which is either job-related or will affect the exercise of employee rights under the controlling federal statute; or (2) a showing that it would be futile to require the employee to internally exhaust remedies. *See, e.g., Glover v. St. Louis–San Francisco Railway Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Lucas v. Warner & Swasey Co.*, 475 F.Supp. 1071 (E.D.Pa.1979). It is well settled, however, that none of the exceptions apply unless the employee first makes some attempt to exhaust internal remedies and is then denied meaningful access to the grievance procedure. *Maddox*, 379 U.S. at 652, 85 S.Ct. at 616; *see also Glover*, 393 U.S. at 330, 89 S.Ct. at 551.

In the instant case, step one of the City's grievance procedure calls for the complainant to meet with his immediate supervisor and "orally discuss the grievance." Roberts testified that he discussed his problem of "working nine hours to everyone else's eight" with each of several supervisors, who told him to "take it up with the commander." When he did so, the commander tore up his overtime slip with the explanation that "this [policy] came from City Hall." Construing the evidence in the light most favorable to the non-movant, Roberts, we find there is some evidence that Roberts made an unsuccessful attempt to utilize the City's internal remedies.

█ Robert contends, furthermore, that his fear of retaliation for progressing through step six of the procedure constituted a denial of meaningful access to the

---

2. *Richards v. Hughes Tool Co.*, 615 S.W.2d 196 (Tex.1981) and *Spainhouer v. Western Electric Co.*, 615 S.W.2d 190 (Tex.1981) involved employees who used some but not all the steps of the employer's grievance procedure. The issue of failure to exhaust internal remedies was not raised. The Texas Supreme Court in each case held that where there was no final settlement under union grievance proceedings, the employee was not precluded from bringing his action in court, thus distinguishing *Thompson v. Monsanto*.

procedure. We hold that a reasonable fear of retaliation which operates to deny one meaningful access to an employer's internal remedial system constitutes an exception to the doctrine of exhaustion of remedies. Roberts stated during his deposition that several fellow officers had been disciplined by transfer to less desirable jobs for complaining about various conditions at the police department. Even though he presented no evidence to show that the transfers of the other officers were in fact caused by their usage of the grievance procedure, his testimony is some evidence of a fear of retaliation. In addition, the commander's act of tearing up the overtime slip could be construed not only as a rejection of his claim for overtime pay, but also as an indication that no discussion of the problem would be entertained.

 Viewing the evidence in the light most favorable to the nonmovant, we find that a fact issue is present regarding whether Roberts had a reasonable fear of retaliation by the City if he attempted to exhaust his administrative remedies resulting in a denial to him of meaningful access to the grievance procedure.

Roberts' first point of error is sustained.

The judgment of the trial court is REVERSED and the cause REMANDED for trial.