Brown v. Sabre

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-214-CV

PAUL BROWN, INDIVIDUALLY APPELLANT

AND ON BEHALF OF ALL OTHER 

PERSONS SIMILARLY SITUATED 

V.

SABRE, INC. AND SABRE APPELLEES

HOLDINGS CORP., DELAWARE 

CORPORATIONS 

------------

FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Appellant Paul Brown, individually and on behalf of all other persons similarly situated (“Brown”), appeals the trial court’s grant of Defendants’ Second Motion for Summary Judgment and in a single issue globally asserts that the trial court erred by granting summary judgment.  We affirm.

II.  Background

Brown was an employee of Sabre, Inc. when his employer sold part of its operations to Electronic Data Systems Corporation (“EDS”) in 2001.  It is undisputed that Brown was an at-will employee.  All 4,200 Sabre employees whose jobs were to be eliminated were offered positions with EDS.  Brown and the others affected were given the option to accept a position with EDS, which was referred to as being “transitioned” to EDS, or to find other employment.  On March 29, 2001, Brown accepted a position to begin work for EDS in July 2001, but he continued to work at Sabre in the interim. 

Sabre’s vacation policy was that vacation that was earned during a year could be taken only in the following year.  For the year 2000, Brown was credited with twenty-five vacation days to be taken in 2001.  Generally, the company expected employees to use their entire vacation and could not carry over days to the next year.  Employees were not entitled to payment for unused vacation days.  Another vacation policy stated that “[i]f you leave the company, you will be paid for any earned but unused vacation days, as long as you provide two weeks[‘] resignation notice.”  Brown was aware of the policy but did not resign or give two weeks’ resignation notice.  In response to confusion on the part of some employees regarding how their accrued vacation to be taken in the year 2001 would be treated as a result of the EDS transition, on May 23, 2001 Sabre stated in a memo to “All Employees Transitioning to EDS” that “[t]he purpose of this memorandum is to assure you that Sabre is keeping you whole in respect to your Sabre vacation—that is part of the contract between Sabre and EDS.” 

On that same day, two months after Brown had accepted employment with EDS but while he was still working at Sabre, Sabre allegedly changed the vacation policy by stating that employees would not be paid for any vacation that would be honored or assumed by a “Successor or Affiliate,” that is, EDS, “except as required by law.”  Shortly thereafter, he received his final paycheck from Sabre, which included payment for two and one-half weeks of vacation that had accrued in 2001 for use in 2002.  However, he discovered that he did not get paid for the sixteen days that represented the amount of accrued vacation that he had earned in 2000 to be taken in 2001 but which he had not yet taken prior to his transition to EDS.

Although disputed by Sabre, Brown asserts that when he left Sabre and began working for EDS, EDS did not offer him his Sabre accrued vacation time or pay him for the time equivalent of the earned vacation time, as had been represented by Sabre to be a part of the Sabre/EDS contract.  As a result, he filed suit against Sabre under a breach of contract theory.  Prior to filing suit, Brown contacted the U.S. Department of Labor to inquire about his right to receive vacation pay for accrued but unused vacation but was told that the Department does not get involved in such matters.  He also filed a complaint with the Texas Workforce Commission, seeking payment for accrued vacation time, but did not appeal from its determination that

[t]he law provides that claims for [vacation] can be enforced as unpaid wages only when the amounts are owed under a written agreement with the employer or under a written policy of the employer.  The employer’s written policy or written agreement did not provide for cash payments for unused leave upon separation from employment. 

After initiation of the lawsuit and relevant discovery, Sabre filed a traditional motion for summary judgment, styled “Defendant’s Second Motion for Summary Judgment and Supporting Brief,” on the basis that as an at-will employee, Brown had no contract with Sabre as a matter of law, and thus there could be no breach of contract.  Simply put, no contract—no breach.  This appeal resulted.

III.  Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met his summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
S.W. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
S.W. Elec. Power Co., 
73 S.W.3d at 215; 
Sci. Spectrum, Inc. v. Martinez
, 941 S.W.2d 910, 911 (Tex. 1997); 
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant.  
Great Am.
, 391 S.W.2d at 47.

In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence are disregarded and the evidence favorable to the nonmovant is accepted as true.  
Harwell v. State Farm Mut. Auto. Ins. Co.
, 896 S.W.2d 170, 173 (Tex. 1995).  Evidence that favors the movant's position will not be considered unless it is uncontroverted.  
Great Am.
, 391 S.W.2d at 47. 
 A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff’s cause of action cannot be established.  
Elliott-Williams Co. v. Diaz
, 9 S.W.3d 801, 803 (Tex. 1999).  The defendant as movant must present the summary judgment evidence that negates an element of the plaintiff’s claim.  
Centeq Realty, Inc. v. Siegler
, 899 S.W.2d 195, 197 (Tex. 1995).  Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact with regard to the element challenged by the defendant.  
Id.
 

IV.  At-Will Employment

A.  Historical Development

A version of the employment at-will doctrine can be traced back at least as far as fifteenth century England and the Statute of Laborers Act, which provided that if any employee was hired for an indefinite period of time, he was presumed to be hired for one year and could not be terminated during that year except for reasonable cause.  
Richard R. Carson, Texas Employment Law § 
201 (1993).  The doctrine emerged in the United States in 
Hathaway v. Bennett
, 10 N.Y. 108 (1854), in which a New York court found in favor of an employer who fired an employee without advance notice.  “Wood’s Rule,” attributed to Professor Horus Wood, is also often cited as an original source of the employment at-will doctrine.  In his 1877 paper, 
Treatise on the Law of Master and Servant
, he stated what would later be known as Wood’s Rule:  

When the continuance of the term of service by the contract of hiring is in any manner left discretionary with either party, either may put an end thereto at any time . . . . With us the rule is inflexible that a general or indefinite hiring is primafacie a hiring at will, and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof.

H.G. Wood, Treatise on the Law of Master & Servant
 § 272 (1877).  

The genesis of the doctrine in Texas can be traced to the Texas Supreme Court ruling in 
East Line and Red River Railroad Company v. Scott
, wherein the court, relying on various authorities including Wood’s Rule, stated that “[i]t is very generally, if not uniformly held, when the term of service is left to the discretion of either party, or the term left indefinite, or determinable by either party, that either may put an end to it at will, and so without cause.”  
72 Tex. 70, 10 S.W. 99, 102 (Tex. 1888).  This general doctrine is still applicable today.  “The long-standing rule in Texas provides for employment at will, terminable at any time by either party, with or without cause, absent an express agreement to the contrary.”  
Fed. Express Corp. v. Dutschmann
, 846 S.W.2d 282, 283 (Tex. 1993).  Any modification of an employee’s at-will employment status must be based on expressed, rather than implied, agreements that are clear and specific.  
Montgomery County Hosp. Dist. v. Brown
, 965 S.W.2d 501, 503 (Tex. 1998).  Further, it is the employee’s burden to prove a contract existed with the employer.  
See Massey v. Houston Baptist Univ
., 902 S.W.2d 81, 83 (Tex. App.—Houston [1st Dist.] 1995, writ denied).  

B.  Employee Handbooks/Policy Manuals
 
and Disclaimers

The long-standing rule in Texas is that an employee without a written employment contract is an employee-at-will, and the employment relationship is terminable at any time by either party, with or without cause. . . . In numerous cases, discharged employees have attempted to recover for breach of contract by alleging that their employers’ personnel manuals contained enforceable promises altering the at-will relationship. . . . Texas courts have generally rejected this theory, particularly where a specific disclaimer in the employee handbook warns the employee that the manual is intended to provide guidelines only, and does not create contractual rights.  

Vida v. El Paso Employees’ Fed. Credit Union
, 885 S.W.2d 177, 180-81 (Tex. App.—El Paso 1994, no writ).  As a general rule employee handbooks and policy manuals constitute general guidelines in the employer/employee relationship and do not create implied contracts between the employer and employee.  
Ortiz v. United Servs. Auto. Ass’n
, No. 04-99-00345-CV, slip op. at 3, 2000 Tex. App. LEXIS 7898, at *6-7, 10 (Tex. App.—San Antonio Nov. 2, 2000, no pet.) (not designated for publication) (noting that an employee manual did not create an employment contract when there was nothing in the manual that limited the employer’s right to terminate employment);
 
Shell Oil Co. v. Humphrey
, 880 S.W.2d 170, 176 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding no implied contract when employee handbook did not limit employer’s right to terminate employment); 
Day & Zimmerman, Inc. v. Hartridge
, 
831 S.W.2d 65, 69 (Tex. App.—Texarkana 1992, writ denied) (stating that statement of company policy, without an express agreement, did not create contractual rights in employment); 
Salazar v. Amigos Del Valle, Inc
., 754 S.W.2d 410, 413 (Tex. App.—Corpus Christi 1988, no writ
) (finding policies and procedures manual did not raise a fact issue as to whether an implied agreement existed); 
Vallone v.
 Agip Petroleum Co.
, 705 S.W.2d 757, 759 (Tex. App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.) (
holding that if the  only agreement alleged is an implied agreement based on a policy manual, there is no alleged basis upon which the term of employment could be anything other than at-
will); 
Reynolds Mfg. Co. v. Mendoza
, 644 S.W.2d 536, 539 (Tex.
 App.—Corpus Christi 1982, no 
writ) (stating that handbook was a general guideline that presented 
no evidence of any express agreement limiting the  discharge of employees);
 
see also Totman v. Control Data
 Corp.
, 707 S.W.2d 739, 744 (Tex. App.—Fort Worth 1986, no writ) (finding the mere presence of an employee handbook, without introducing it as evidence, does not change nature of an at-will employment relationship).  There is a “generalized rejection [by Texas courts] of the claim that employment manuals issued unilaterally by an employer can per se constitute written employment contracts and create specific limitations which take the cases out of the at-will doctrine.”  
Aiello v. United Air Lines, Inc., 
818 F.2d 1196, 1198 (5th Cir. 1987).

This is particularly true if the handbook contains a disclaimer. 
 
“A disclaimer in an employee handbook . . . negates any implication that a personnel procedures manual places a restriction on the employment-at-will relationship.” 
 Dutschmann
, 846 S.W.2d at 283; 
see Werden v. Nueces County Hosp. Dist.
, 28 S.W.3d 649, 651 (Tex. App.—Corpus Christi 2000, no pet.) (concluding that the disclaimer clearly did not express an intent to create a binding contract).

Nevertheless, one sister court has held that an employee handbook can become part of an oral employee contract and limit the employer’s right to discharge an employee.  
Wilhite v. H.E. Butt Co.
, 812 S.W.2d 1, 6 (Tex. App.—Corpus Christi 1991, no writ), 
overruled on other grounds by Cain v. Hearst Corp.
, 878 S.W.2d 577 (Tex. 1994).  However, that case erroneously cites as authority 
Berry v. Doctor’s Health Facilities
, 715 S.W.2d 60, 61 (Tex. App.—Dallas 1986, no writ).  The 
Berry
 case does not stand for that proposition and does not make that statement, but rather holds that “the record is devoid of any facts that would elevate the employee handbook beyond its self-proclaimed status of a revocable general guideline,” emphasizing the disclaimer that  indicated that the handbook did not constitute the contract.  
Id. 
at 61-62.  Even so, the 
Wilhite
 court goes on to note that “[w]hen the handbook contains an express disclaimer that the handbook in no way constitutes an employment contract, it does not . . . .”  
812 S.W.2d at 6.

Nevertheless, under very limited circumstances, employee handbooks or policy manuals have been held by some courts to contractually modify the at-will employment relationship or form otherwise enforceable promises.  
See Paniagua v. City of Galveston, Tex.
, 995 F.2d 1310, 1314-15 (5th Cir. 1993) (holding that a magistrate’s finding was “not clearly erroneous” when he determined the City of Galveston Personnel Rules and Regulations, which stated that employees on stand-by would be paid in a certain manner, required payment for stand-by time to Mr. Paniagua);
 Aiello
, 818 F.2d at 1198-1201 (finding that there existed a written or oral agreement, or written agreement with oral additions, which contained a specific contract with binding disciplinary standards and disciplinary procedures, that is, a manual contained a specific, detailed employer obligation to discharge only for just cause
);
 
Vida
, 885 S.W.2d at 181 (noting that the at-will relationship may be modified when a handbook, without a disclaimer, “specifically and expressly curtails the employer’s right to terminate the employee . . . restrict[s] the at-will relationship in a 
meaningful 
and 
special 
way [and] contain[s] a specific contractual term altering at-will status”); 
see also Stiver v. Tex. Instruments, Inc.
, 750 S.W.2d 843, 846 (Tex. App.—Houston [14th Dist.] 1988, no writ); 
Benoit v. Polsar Gulf Coast, Inc
., 728 S.W.2d 403, 406 (Tex. App.—Beaumont 1987, writ ref’d n.r.e.), (adopting the “meaningful and special way” approach).
  Indeed, this court has held that “[a]lthough an employee handbook is not a contract that will alter the at-will nature of the employment relationship, a provision in an employee manual may create enforceable rights if the provision does not alter the at-will nature of the employer relationship.”  
Burlington N. R.R. Co. v. Akpan
, 943 S.W.2d 48, 52 (Tex. App.—Fort Worth 1996, no writ) (holding that a written policy invoking arbitration for certain labor disputes would be enforced, noting that Texas courts strongly favor arbitration and courts usually indulge every reasonable presumption in favor of arbitration) (citing 
E-Z Mart Stores, Inc. v. Hale
, 883 S.W.2d 695, 699 (Tex. App.—Texarkana 1994, writ denied)).  It is noteworthy that this case is silent on the factual issue of employee handbooks or manuals, as well as disclaimers.

In 
E-Z Mart, 
the court found an implied-in-fact contract existed through the posting of a notice stating in part “all E-Z Mart employees are covered by Workmen’s Compensation Ins. through E-Z Mart, Inc. Self Insurance Program.  The Company has assumed the role of your Workermen’s Comp. Insurance Company.”  
883 S.W.2d at 699
. 
 The court noted that a contract implied-in-fact arises from the acts and conduct of the parties, and it was implied from the facts and circumstances that there was a mutual intention to contract. 
 Id
.  The employee continued to work for E-Z Mart after the posting of the notice, and the court found that the benefit of the service to E-Z Mart constituted her consideration, the program being another form of compensation for her services.  
Id.  
Hence the court found that, under those particular circumstances, there was a contractual obligation outside of the employment at-will status of the employee.  
Id
.  Further, even outside of the employee manual, “[a]t-will employees may contract with their employers on any matter except those which would limit the ability of either employer or employee to terminate the employment at will.”  
Light v. Centel Cellular Co. of Tex.
, 883 S.W.2d 642, 644 (Tex. 1994).

V.  Vacation Pay

Not surprisingly, the issue of vacation pay has been litigated previously, apparently originating in 1968 in the case of 
Interstate Hosts, Inc. v. Thompson
, 435 S.W.2d 957, 958-59 (Tex. Civ. App.—Dallas 1968, no writ). 

While the question presented appears to be one of first impression in Texas, its resolution seems quite simple.  Any vested interest or right acquired concerning vacation pay must be determined from the terms of the contract of employment, either expressed or implied.  [Here] there was no written contract of employment . . . [and we find] no basis in law or in fact for the recovery of the vacation rights.

Id
. at 958.  One sister court has determined that an alleged contract to pay for unused vacation time which stated that the plan was voluntary and “may be terminated or modified at any time” did not create a contractual obligation to pay for unused vacation, noting cases holding that no contract was formed where an employer retained the right to amend the handbook, and a handbook that could be unilaterally amended or withdrawn did not constitute a contract.
  Ryan v. Superior Oil Co.
, 813 S.W.2d 594, 596 (Tex. App.—Houston [14th Dist.] 1991, writ denied).  Also in the case of 
Chester v. Jones
, the court found that if an employee had the ability to take vacation prior to being discharged but did not do so, in the absence of contractual language showing intent to pay a discharged associate for unused vacation time, such payment was unnecessary. 386 S.W.2d 544 (Tex. Civ. App.—Tyler 1965, no writ), 
cause dism’d
, 391 S.W.2d 722 (Tex. 1965).  
But see Hamby Co. v. Palmer
, 631 S.W.2d 589, 590-91 (Tex. App.—Amarillo 1982, no writ) (upholding the employee’s right to payment where a discharged employee was told he would be paid for accrued but unused vacation time, and the company policy manual confirmed the oral statement but was silent in the event the employee was terminated
).

VI.  Brown’s Theory of Recovery

In Plaintiff’s Original Petition, the live pleading at the time of filing of Defendant’s Second Motion for Summary Judgment, plaintiff’s sole cause of action was for breach of contract.  Specifically, Brown asserted that “[w]hen Plaintiff and Class Members were transitioned from Sabre to EDS pursuant to the EDS/Sabre acquisition, Sabre refused to pay them [in 2001] for the accrued unused vacation they earned in 2000 and such refusal constitutes a breach of contract.”  Brown’s argument is succinctly articulated in its briefing to this court:  “Sabre, in its employee handbook, had promised Brown that he had earned the vacation and would be paid for it upon his leaving the company.  Sabre breached that promise and did not pay Brown for the vacation hours that he had earned prior to the year 2001.”  In order for Brown to prevail on his claim for breach of contract, he must demonstrate that a binding contract existed, that it was breached by Sabre, and that he suffered damages caused by the breach, 
Ryan
, 813 S.W.2d at 596  As articulated by Sabre in its second motion for summary judgment, “[t]he sole issue before this Court on the instant Motion is whether a valid contract exists between Plaintiff [Brown] and Sabre for the vacation benefits Plaintiff allegedly ‘earned’ in 2000.”  

The elements required for the formation of a valid contract are well known.  They include an offer, an acceptance, a meeting of the minds, each party’s conceding to the terms, and an execution and delivery of the contract with the intent that it be mutual and binding.  
Primes Prods. Inc. v. S.S.I. Plastics, Inc
., 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).  Therefore, we will examine the employee handbook and surrounding circumstances and determine if a valid contract existed between Sabre and Brown regarding Sabre’s vacation policy and vacation pay.

VII.  Analysis

Lest we lose sight of the mountain while traversing the forest of history and legal development, the macroscopic view of this case is that of an employee who does not have a written employment agreement; who relies on an employee manual that Texas law disfavors as forming contractual obligations, particularly when, as here, a specific disclaimer is involved; and who relies on a single memorandum which he says changed a policy—a policy that could be amended by the very manual on which he relies.

Looking to the facts of this case, Sabre’s employee handbook contained the following disclaimer:

These policies apply to all employees of Sabre.  The company reserves the right to alter, amend, modify[,] or terminate these policies at any time in its sole discretion.  This Guide does not guarantee continued employment, nor does it represent an employment contract, express or implied.

Employment at Sabre is considered to be “employment-at-will.”  This means that either party may terminate the relationship at any time, with or without notice.  Only the Chief Executive Officer (CEO) of Sabre has any authority to enter any agreement for any specified period of time, or to make any agreement contrary to this policy. 

This disclaimer demonstrates Sabre’s clear intent not to create any binding contractual rights through its employee handbook.  
Werden
, 28 S.W.3d at 651 (citing 
Gamble v. Gregg County
, 932 S.W.2d 253, 255 (Tex. App.—Texarkana 1996, no writ)).  As discussed above, most Texas courts have held that if there is an “explicit disclaimer” in a policy or manual of an at-will employee, no contract is formed.  
Dutschmann
, 846 S.W.2d at 283; 
Werden
, 28 S.W.3d at 649
.  
Brown argues, in an attempt to distinguish his case from the applicable case law, that the vacation policy contained in the handbook was not voluntary and expressly provided that vacation is “earned” monthly and “credited” annually.  This, however, ignores the undisputed fact that the disclaimer applied to the handbook as a whole, and therefore all of the vacation policies were voluntary and could be altered, amended, modified, or terminated by Sabre at any time.  It also ignores the fact that the specific issue of payment for unused time is a policy decision on how to pay, not whether to pay.  Brown earned his vacation time; he did not “earn” the right to be paid for unused vacation time if he resigned (which he did not).  This is a policy which could be, and was, modified by Sabre.  Brown also argues that the Memorandum to Transitioning Employees confirmed Sabre’s obligation to pay accrued vacation.  Even when viewing this memorandum favorably to Brown, the vacation policy remained voluntary, and no breach occurred when Sabre did not pay Brown for the unused accrued vacation.  
See Ryan
, 813 S.W.2d at 596 (stating that letters and memoranda did not create a binding contract or modify a vacation plan’s voluntary nature).  Any contract existed between Sabre and EDS, not between Sabre and Brown.  The memorandum was merely explanatory and did not modify the voluntary nature of the policy.  
Id.
  We hold that no contract existed between Sabre and Brown, and accordingly, we overrule Brown’s single issue.

VIII. Conclusion

Having overruled Brown’s single issue, we affirm the judgment of the trial court.

BOB MCCOY

JUSTICE

PANEL B: DAUPHINOT, WALKER, and MCCOY, JJ.

DAUPHINOT, J. concurs without opinion.

DELIVERED:  August 31, 2005