[COMMENT1] 
 
 
 
 
 
                                      
COURT 
OF APPEALS
                                       
SECOND DISTRICT OF TEXAS
                                                   
FORT WORTH
 
 
                                       
NO.  2-08-236-CV
 
 
FORT WORTH 
TRANSPORTATION                                        
APPELLANTS
AUTHORITY AND MCDONALD 

TRANSIT, 
INC.
 
                                                   
V.
 
RICKY C. 
THOMAS                                                                 
APPELLEE
 
                                              
------------
 
           
FROM THE 352ND DISTRICT COURT OF TARRANT 
COUNTY
 
                                              
------------
 
                                             
OPINION
 
                                              
------------
                                            
Introduction

Appellants 
Fort Worth Transportation Authority (FWTA) and McDonald Transit, Inc. appeal the 
trial court=s 
order granting appellee Ricky C. Thomas=s 
motion for summary judgment in this breach of contract case.  In two issues, appellants contend that 
the trial court improperly granted Thomas=s 
summary judgment motion because he failed to exhaust contractual remedies before 
filing his lawsuit and because a collective bargaining agreement unambiguously 
permitted the termination of his employment.  We affirm.
                                        
Background Facts
Thomas=s 
employment with appellants
Thomas 
began working for appellants[1] 
as a bus driver in January 1989.  He 
injured his back in 2001 and was unable to work for an extended period of 
time.  Thomas requested and received 
twelve weeks= leave 
under the federal Family and Medical Leave Act (FMLA),[2] 
from July 13 through October 3, 2001.  
Appellants classified Thomas=s 
absences on his Operator Work Record as AFMLA@ from 
July 13 through October 3, 2001.  
One of appellants= 
employees wrote in an e-mail on October 3, 2001, that A[t]oday is the last day of FMLA for Ricky.  Starting tomorrow, 10/4, he is just out 
sick.@  Appellants thereafter changed the 
classification of Thomas=s 
absences on his Operator Work Record to Aill/sickness@ 
beginning October 4, 2001.

While 
he was unable to work, Thomas collected workers= 
compensation benefits and received a series of approximately seven injections as 
treatment for his back injury.  
Thomas was initially released to return to work in April 2002, but 
appellants did not allow him to return to work because he failed an April 16, 
2002 performance evaluation.[3]  In the interim, Thomas received a verbal 
warning, on April 5, and a written warning, on April 30, regarding his 
absences.  The written warning 
stated, in part, AYou now 
have 146 absences.  Please keep in 
contact with the >T= every 
two weeks.@
Appellants 
terminated Thomas=s 
employment by letter dated August 1, 2002.  
The letter cited a provision in a Union Contract Agreement[4] 
that required automatic termination for an absence from work lasting greater 
than one year when such an absence was caused by anything other than military 
leave.

Thomas 
filed a grievance with appellants on August 5, 2002, asking for reinstatement 
because he alleged that his performance evaluation was not required for all of 
appellants= 
employees.  Appellants denied the 
grievance four days later.  Thomas 
proceeded through two more unsuccessful steps in the grievance process,[5] 
and the union did not thereafter pursue arbitration on his 
behalf.
The 
CBA and the Operator Handbook
Effective 
October 1, 2000, appellants entered into the CBA with Teamsters Local Union No. 
997.[6]  The provision in Article 20 under which 
appellants terminated Thomas=s 
employment states in relevant part:  
Athe 
following shall be cause for immediate dismissal without prior warnings: . . . 
being on light duty status and/or absence [sic] from work for any reason other 
than military leave for a period of more than one (1) year.@[7]

Appellants 
also issued employees an Operator Handbook, effective July 2001.  The Operator Handbook included, among 
other things, appellants= FMLA 
and attendance control policies.  
Concerning FMLA leave, the Operator Handbook stated:  AThe T 
complies with the Family and Medical Leave Act (FMLA) for serious health 
problems@ and 
that A[a]s 
with holidays, vacation leave, personal days, funeral leave and jury duty, FMLA 
is not counted as absenteeism.@  The attendance control policy in the 
Operator Handbook stated that it should be Aconstructed 
[sic] in accordance with@ the 
CBA and outlined a progressive disciplinary process for excessive 
absenteeism.  The Operator Handbook 
also specifically defined Aabsence@ under 
its attendance control policy:
Definition of 
AAbsence@
 
The term Aabsence@ means every absence from 
work, regardless of the reason, except for the following:
 
1.     vacations
2.     holidays
3.     floating holiday
4.     jury 
duty
5.     court appearance as defined in Article 37 of the labor 
agreement
6.     military leave
7.     approved union business
8.     approved bereavement
9.     approved administrative leave
10.   leave of absence 
approved under Article 19
11.   absences 
protected by the Family and Medical Leave Act of 1993
12.   absent from 
assigned work for no more than sixty (60) minutes [Emphasis added.] 

 
The 
proceedings in the trial court

Thomas 
filed suit against appellants in January 2003, alleging in his original petition 
that they violated Texas labor laws when they terminated his employment.  Thomas filed a second amended petition 
in August 2006 that included a breach of contract claim and claims of 
retaliation and discrimination under the labor code.[8]
Thomas 
filed a motion for summary judgment in November 2007, contending that appellants 
breached the CBA.[9]  Thomas argued that because the Operator 
Handbook=s 
definition of Aabsence@ 
excluded FMLA leave, he was actually Aabsent@ for 
less than one year; appellants therefore breached the CBA by terminating his 
employment when they did.  
Appellants responded to Thomas=s 
summary judgment motion by asserting that his contractual claim was precluded 
because he did not seek arbitration before bringing suit, that the Operator 
Handbook could not be treated as a contract, and that the CBA justified his 
termination.  The trial court 
granted Thomas=s 
summary judgment motion in January 2008.  
Thomas then nonsuited his other claims, and 
appellants timely filed their notice of appeal.

                                       
Standard of Review
We 
review the trial court=s 
grant of summary judgment de novo.  
See Gray v. Nash, 259 S.W.3d 286, 289 (Tex. App.CFort 
Worth 2008, pet. denied).  A 
plaintiff is entitled to summary judgment on a cause of action if it 
conclusively proves all essential elements of the claim.  See Tex. R. Civ. P. 166a(a), (c); MMP, Ltd. v. Jones, 710 S.W.2d 59, 60 
(Tex. 1986).  In other words, the 
plaintiff meets the summary judgment burden by establishing that no genuine 
issue of material fact exists and that it is entitled to judgment as a matter of 
law.  Tex. R. Civ. 
P. 166a(c); Sw. Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 
1979). 

When 
reviewing the trial court=s 
grant of a plaintiff=s 
summary judgment motion, we take as true all evidence favorable to the 
defendant, and we indulge every reasonable inference and resolve any doubts in 
the defendant=s 
favor.  See IHS Cedars Treatment 
Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  Evidence that favors the 
plaintiff=s 
position will not be considered unless it is uncontroverted.  See Great Am. Reserve Ins. Co. v. San 
Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965).  However, we must consider whether 
reasonable and fair-minded jurors could differ in their conclusions in light of 
all of the evidence presented.  
See Wal-Mart Stores, Inc. v. Spates, 186 S.W.3d 
566, 568 (Tex. 2006); City of Keller v. Wilson, 168 S.W.3d 802, 822B24 
(Tex. 2005).  Summary 
judgment is proper where, as here, the parties do not dispute the relevant 
facts.  Havlen v. MacDougall, 
22 S.W.3d 343, 345 (Tex. 2000).
                            
Exhaustion of Contractual Remedies
In 
their first issue, appellants contend that the trial court=s 
summary judgment was improper because Thomas waived his breach of contract claim 
by failing to fully comply with the CBA=s 
grievance procedure.  Specifically, 
appellants assert that Thomas failed to pursue arbitration after the three-step 
grievance procedure, thus waiving his breach of contract claim.  Thomas contends, in response, that the 
CBA specifically exempts Amanagement 
rights@ from 
mandatory arbitration and that the decision to terminate Thomas=s 
employment was one of the Amanagement 
rights.@[10]

AWhere 
there is a labor contract between a union and an employee which provides 
procedures for settlement of disputes between the employee and employer, an 
employee is not entitled to redress in the courts where he fails to exhaust his 
remedies under the contract.@  Lindsey v. Gen. Dynamics Corp., 
450 S.W.2d 895, 895B96 
(Tex. Civ. App.CWaco 
1970, no writ); see Int=l 
Union United Auto. Aerospace & Agric. Implement Workers of Am. Local 119 v. 
Johnson Controls, Inc., 813 
S.W.2d 558, 565 (Tex. App.CDallas 
1991, writ denied) (op. on reh=g) 
(indicating that claims may be barred because of a plaintiff=s 
failure to comply with the grievance process in a collective bargaining 
agreement); Roberts v. City of Corpus Christi, 744 S.W.2d 214, 
215B16 
(Tex. App.CCorpus 
Christi 1987, no writ) (A[A]n 
employee generally must exhaust the grievance remedies provided for in a 
collective bargaining agreement or other contract before bringing 
suit.@).  Here, Article 12 of the CBA indicates 
that Aany 
controversy@ 
concerning the application of any of the CBA=s 
provisions Ashall 
be treated as a grievance and shall be settled, if possible.@  Appellants relied on a provision of the 
CBA to justify Thomas=s 
termination, and Thomas has contested the application of this section; thus, his 
complaints were subject to the CBA=s 
grievance procedure.
The 
parties agree that Thomas proceeded through the three steps of the 
CBA=s 
grievance process described above.  
They also agree that the union did not demand arbitration following the 
three-step grievance process.  
Thomas asserts, however, that his discharge was not subject to 
arbitration under the CBA.  We 
agree.

Article 
13 (titled AArbitration@), 
Section A of the CBA provides:  
AShould  any 
grievance remain unsettled after exhausting [the three-step grievance 
procedure], either party hereto shall, if the party desires, demand 
arbitration . . . .  
Otherwise, the grievance shall be considered settled.@  However, Article 13, Section C of the 
CBA states in part, AIssues 
arising out of the exercise of the rights reserved to management under the title 
Rights of Management above, including management=s 
determination of the facts underlying its exercise of such rights, shall not be 
subject to arbitration.@  Article 3 of the CBA, titled 
AManagement 
Rights,@[11] 
states,
Except to the extent 
expressly abridged by a specific provision of [the CBA], the Company reserves 
and retains, solely and exclusively, all of its Common Law rights to manage its 
business, as such rights existed prior to the execution of [the CBA].  Prominent among such unqualified 
rights . . . are the following: . . . to hire, 
lay-off, assign, transfer, and promote employees . . .[;] to adopt and enforce 
working rules; to discipline and discharge employees for just cause.[12]  [Emphasis added.]
 

We 
conclude that the unambiguous cumulative effect of Article 13, Section C and 
Article 3 is that appellants= 
Aunqualified@ 
decision to discharge Thomas based on what they allege was just cause under the 
CBA was not subject to arbitration because this decision was one of their 
AManagement 
Rights.@  Therefore, we hold that Thomas complied 
with the Article 12 grievance procedure, although not successfully demanding 
arbitration, by proceeding through all three grievance steps and that the CBA 
did not require Thomas to also seek arbitration.[13]  We overrule appellants= first 
issue.
                            
Thomas=s Discharge Under the CBA
                                  
and the Operator 
Handbook
 
 

In 
their second issue, appellants argue that the trial court improperly granted 
summary judgment because the Operator Handbook should not have been considered 
to alter the CBA=s 
unambiguous language.  Thomas argues 
that the definition of Aabsence@ in 
the Operator Handbook, which excludes FMLA leave from an Aabsence,@ must 
be considered with Article 20 of the CBA because the CBA does not define 
Aabsence.@[14]  Neither party argues that the CBA is 
ambiguous.  Instead, they offer 
competing contentions as to whether the definition of Aabsence@ in 
the Operator Handbook may be considered when interpreting Article 20 of the 
CBA.
Lack 
of clarity or a disagreement among the parties does not necessarily create an 
ambiguity.  See Universal Health 
Servs., Inc. v. Renaissance Women=s 
Group, P.A., 121 
S.W.3d 742, 746 (Tex. 2003).  
Rather, whether Aa 
contract is ambiguous is a question of law that must be decided by examining the 
contract as a whole in light of the circumstances present when the contract was 
entered.@  
Id.

When 
construing contracts and other written instruments, our primary concern is to 
ascertain the true intent of the parties as expressed in the instrument.  See NP Anderson Cotton Exch., L.P. v. 
Potter, 230 S.W.3d 457, 463 (Tex. App.CFort 
Worth 2007, no pet.); see also City of San Antonio v. Scott, 16 S.W.3d 
372, 377 (Tex. App.CSan 
Antonio 1999, pet. denied) (applying general principles of contract construction 
to the interpretation of a collective bargaining agreement).  To ascertain the parties= 
intent, we may consider together all writings relating to the same transaction, 
even if they were executed at different times.  DeWitt County Elec. 
Coop., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999).  We must examine and consider the entire 
contract in an effort to harmonize and give effect to all provisions so that 
none are rendered meaningless.  
Potter, 230 S.W.3d at 463; see also J.M. Davidson, Inc. v. 
Webster, 128 S.W.3d 223, 229 (Tex. 2003).  AWe 
construe contracts >from a 
utilitarian standpoint bearing in mind the particular business activity sought 
to be served= and 
>will 
avoid when possible and proper a construction which is unreasonable, 
inequitable, and oppressive.=@  Frost Nat=l Bank 
v. L & F Dist., Ltd., 165 
S.W.3d 310, 312 (Tex. 2005) (quoting Reilly v. Rangers Mgmt., 
Inc., 727 S.W.2d 527, 530 (Tex.1987)).  
AIf, 
after the pertinent rules of construction are applied, the contract can be given 
a definite or certain legal meaning, it is unambiguous and we construe it as a 
matter of law.@  Id. (citing 
Webster, 128 S.W.3d at 229).

To 
resolve appellants= 
second issue, we must determine whether the parties intended to exempt FMLA 
leave from a one-year absence under Article 20 of the CBA.  The provision at issue permits 
termination of employment for an absence exceeding one year and specifically 
exempts military leave; it does not expressly reference FMLA leave.  In fact, the CBA does not define 
Aabsence@ and 
does not set forth appellants= FMLA 
policy.  Appellants= FMLA 
policy and a definition of Aabsence@ are 
instead contained in the Operator Handbook.[15]  The question, then, is whether the 
Operator Handbook should be considered with the CBA to determine if 
Thomas=s 
Aabsence@ 
exceeded one year.
AUnder 
generally accepted principles of contract interpretation, all writings that 
pertain to the same transaction will be considered together, even if they were 
executed at different times and do not expressly refer to one 
another.@  Parks, 1 S.W.3d at 102.  The CBA became effective October 1, 
2000, and the Operator Handbook is dated July 2001, so they were not 
contemporaneously executed.  They 
may nevertheless be considered together if they relate to the same transaction 
and the surrounding circumstances do not indicate that they should not be 
considered together.  Id.; 
see also Miles v. Martin, 321 S.W.2d 62, 65 (Tex. 
1959).

The 
CBA set forth the agreements between appellants and the union with regard to the 
terms and conditions of employment for the union=s 
members.  It addressed, among other 
things, rights reserved to management, strikes and lockouts, uniforms, work 
schedules, discipline, termination for Ajust 
cause,@ and 
grievance procedures.  The Operator 
Handbook similarly set forth appellants= 
personnel policies, generally with more specificity than the CBA, and included 
policies relating to employee benefits, health and safety, FMLA leave, and 
absenteeism.  The Operator Handbook 
referenced the CBA, and its attendance control policy 
provided that it was to be Aconstructed 
[sic] in accordance with@ the 
CBA.  Under the circumstances of 
this case, the CBA and the Operator Handbook related to the same transaction 
because they set forth the terms and conditions of Thomas=s 
employment with appellants.

We 
must next consider whether the surrounding circumstances prevent the CBA and the 
Operator Handbook from being considered together.  In this regard, the CBA stated in 
Article 42: AThis 
Agreement together with its Exhibits constitutes the only agreement between the 
parties hereto, and no previous addenda, memoranda[,] understandings or practices, whether written or 
oral, shall be binding upon either party.@[16] 
[Emphasis added.]  The CBA did not, 
however, state that subsequent documents, such as the Operator Handbook, 
cannot be considered with the CBA.  
The Operator Handbook, on the other hand, stated that its attendance 
control program was Aintended 
to be and should be constructed [sic] in accordance with@ the 
CBA and any successor CBAs.  The 
Operator Handbook also stated, however, that A[i]t is not an employment contract,@ that 
it Ais not 
intended to create contractual obligations of any kind,@ and 
that it is Anot 
intended to disagree in word or intent with the current Labor 
Agreement.@  Even though the Operator Handbook does 
not purport to create contractual rights, we find that we may consider its terms 
in determining whether the parties intended to exempt FMLA leave from the 
provision in Article 20 under which appellants terminated Thomas=s 
employment.  The CBA and the 
Operator Handbook related to the same transaction, and their terms do not 
clearly prevent them from being considered together.  See Parks, 1 S.W.3d at 102; 
Miles, 321 S.W.2d at 65.  Thus, we will consider the CBA and 
Operator Handbook together to determine the parties= 
intent with respect to FMLA leave and absences exceeding one year.[17]

Appellants 
terminated Thomas=s 
employment under the provision in Article 20 that states: Athe  following shall 
be cause for immediate dismissal without prior warnings: . . . being on light 
duty status and/or absence [sic] from work for any reason other than military 
leave for a period of more than one (1) year.@  The provision does not expressly exempt 
FMLA leave from an absence justifying termination.[18]  However, the Operator Handbook states: 
AThe T 
complies with the Family and Medical Leave Act (FMLA) for serious health 
problems.@  The Operator Handbook also provides that 
A[a]s 
with holidays, vacation leave, personal days, funeral leave and jury duty, 
FMLA is not counted as absenteeism.@  [Emphasis added.]  The Operator Handbook further defines 
Aabsence@ as 
Aevery 
absence from work, regardless of the reason, except for the following: . . . 
(11) absences protected by the Family and Medical Leave 
Act of 1993.@[19]  Considering the CBA and the Operator 
Handbook together, we conclude that FMLA leave cannot be counted as an 
Aabsence@ under 
Article 20 of the CBA when terminating an employee for an absence exceeding one 
year.[20]
Based 
on the foregoing, we hold that Article 20 of the CBA must be interpreted to 
exclude FMLA leave when calculating whether Thomas was absent from work for more 
than one year.  The summary judgment 
evidence establishes that Thomas first missed work on July 13, 2001, when his 
FMLA leave began, and that his FMLA leave ended on October 3, 2001.  The summary judgment evidence also 
establishes that appellants terminated Thomas=s 
employment on August 1, 2002.  
Excluding Thomas=s FMLA 
leave, Thomas was actually Aabsent@ from 
work for less than one year when appellants terminated his employment on August 
1, 2002.  Appellants therefore 
breached the CBA by terminating Thomas=s 
employment when they did.  The trial 
court properly granted summary judgment to Thomas on his breach of contract 
claim.  We overrule appellants= 
second issue.

                                             
Conclusion
Having overruled each of 
appellants= issues, we affirm the 
judgment of the trial court. 
 
 
 
ANNE 
GARDNER
JUSTICE
 
PANEL:  LIVINGSTON, DAUPHINOT, and GARDNER, 
JJ.
 
LIVINGSTON, J. filed a 
dissenting opinion.
 
DELIVERED:  October 29, 
2009




 
 
 
 
 
 
 
 
 
 
 
                                                
COURT OF 
APPEALS
                                                 
SECOND DISTRICT OF TEXAS
                                                                
FORT WORTH
 
 
                                       
NO.  
2-08-236-CV
 
 
FORT WORTH TRANSPORTATION 
                                       
APPELLANTS
AUTHORITY AND MCDONALD 

TRANSIT, 
INC.
 
                                                   
V.
 
RICKY C. THOMAS                                                                
APPELLEE
 
                                              
------------
 
           
FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY
 
                                              
------------
 
                                   
DISSENTING 
OPINION
 
                                              
------------
The 
majority holds that a unilateral, nonbargained 
employee handbook may create contractual rights (thus serving as the basis of a 
breach of contract claim) and alter the unambiguous language of a collective 
bargaining agreement (CBA) even though the handbook specifically and plainly 
says that it cannot do so.  For this 
and other reasons, I respectfully dissent.

The 
CBA unambiguously required the immediate termination of Thomas=s 
employment if he was absent Afrom 
work for any reason other than military leave for a period of more than 
one (1) year.@  [Emphasis added.]  The undisputed evidence shows that 
Thomas did not work from July 2001 until August 2002 (a period of more than one 
year) and that he did not take military leave.  Despite the evident justification for 
Thomas=s 
termination when connecting those facts, the majority holds that Thomas may 
succeed on his sole claimCwhich 
must focus on a breach of the CBA itself, the only agreement between the 
partiesCbecause 
his twelve weeks= leave 
under the federal Family and Medical Leave Act (FMLA) must expand the one-year 
absence limitation.  See Majority op. at 18.[21]  The record and the law preclude the 
majority=s 
holding for several reasons.

First, 
although the majority correctly explains that in some circumstances documents 
related to the same transaction may be considered together, we should not rely 
on that manner of construction when the documents themselves prohibit such 
reliance.  See Jones v. 
Kelley, 614 S.W.2d 95, 99 (Tex. 1981) (explaining that the principle of 
construing writings together is a Adevice 
for ascertaining and giving effect to the intention of the parties and cannot be 
applied arbitrarily and without regard to the realities of the 
situation@) 
(quoting Miles v. Martin, 159 Tex. 336, 341, 321 S.W.2d 62, 65 
(1959)).
Here, 
the handbook indicates that it does not enlarge collectively‑bargained provisions; its first textual page 
states that it is
intended to provide employees 
with a general understanding of [appellants=] personnel 
policies.  Employees are encouraged 
to familiarize themselves with the contents of the handbook, as it will answer 
many common questions concerning employment with 
[appellants].
 
However, this handbook 
cannot anticipate every situation or answer every question about 
employment.  It is not an 
employment contract and it is not intended to create contractual obligations of 
any kind. . . .
 
 . . .  These policies and/or benefits are 
not intended to disagree in word or intent with the current Labor Agreement. 
[Emphasis added.]
 
 

Other 
parts of the CBA and the handbook also weigh against the majority=s 
conflated construction of those two documents.  For instance, while the CBA references 
work rules and rule books, it limits an employee=s duty 
to follow such provisions to Arules 
and regulations of [appellants] which are not in conflict with [the 
CBA],@ which 
dictates the superiority of the CBA=s 
provisions.  Also, the 
CBA=s 
reference to such rules does not provide that any definitions from the rules 
should be incorporated into the CBA=s 
provisions.  The CBA further 
states that it is the Aonly 
agreement between the parties.@  Finally, although the handbook indicates 
that it is to be construed in accordance with the CBA in use at the time of 
Thomas=s 
termination, it does not state the inverseCthat 
the CBA is to be construed in accordance with the 
handbook.

Second, 
as the majority recognizes, our precedent establishes that as a general rule, 
employee handbooks and policy manuals constitute general guidelines in the 
employment relationship and do not create implied contracts between the employer 
and employee that alter the at-will employment relationship.  Majority op. at 16; see Brown v. 
Sabre, Inc., 173 S.W.3d 581, 585 (Tex. App.CFort 
Worth 2005, no pet.) (describing that the rule particularly applies where, as 
here, Aa 
specific disclaimer in the employee handbook warns the employee that the manual 
is intended to provide guidelines only, and does not create contractual 
rights@); 
see also Fed. Exp. Corp. v. Dutschmann, 846 
S.W.2d 282, 283 (Tex. 1993); Day & Zimmermann, Inc. v. Hatridge, 831 S.W.2d 65, 69 (Tex. App.CTexarkana 
1992, writ denied) (explaining that A[u]nder Texas law . . . a statement of company policy, 
unaccompanied by an express agreement, does not create contractual 
rights@).  In the same way, although 
Thomas=s 
employment was not at-will, the handbook should not be construed to alter the 
provisions of the collectively-bargained contract on which Thomas bases his 
claim without an expressed intention to do so.  The majority has failed to explain why 
the precept that guided our decision in Brown, that unilateral employment 
manuals cannot per se constitute written employment contracts, should not also 
apply to the ability of such manuals to alter preexisting contractual employment 
relationships.  See Brown, 
173 S.W.3d at 586 (citing Aiello v. United Air Lines, Inc., 818 F.2d 
1196, 1198 (5th Cir. 1987)).
Third, 
Thomas=s 
argument that the handbook=s 
Aabsence@ 
definition should be incorporated into the CBA to excuse FMLA leave does not 
make sense when considering the CBA=s 
specific and limited designation of military leave as an excused absence because 
military leave is also excluded as an absence in the handbook.  In other words, if appellants and 
Thomas=s 
union had intended to add FMLA leave to an Aabsence@ 
lasting greater than one year in the CBA by tacitly incorporating the 
handbook=s 
definitional provision, there would be no need to specifically mention military 
leave in the CBA, which is also excluded in that same definitional 
provision.  If that had been their 
intent, the specific mention of military leave in the CBA=s 
termination provision would amount to unnecessary surplusage.  
And, of course, by the majority=s 
decision that indicates its opinion of the contracting parties= 
intent to tacitly incorporate the handbook into the CBA, the Afor 
any reason other than military leave@ 
phrase in the CBA=s 
termination provision is rendered wholly 
inconsequential.

Thus, 
the majority=s 
decision to alter the CBA=s 
language by the handbook=s 
provisions defeats its stated goal of giving effect to Aall 
provisions so that none are rendered meaningless.@  Majority op. at 13; see NP Anderson 
Cotton Exch., L.P. v. Potter, 230 S.W.3d 457, 463 (Tex. App.CFort 
Worth 2007, no pet.).  For the same 
reason, the decision also weighs against the entitlement of parties to a 
contract to select their own obligationsCrather 
than having a court create obligations for themCby 
carefully choosing the words they select to include in the contract.[22]  See Doe v. Tex. 
Ass=n of 
Sch. Bds., Inc., 283 
S.W.3d 451, 458 (Tex. App.CFort 
Worth 2009, pet. filed) (citing Cross Timbers Oil Co. v. Exxon Corp., 22 
S.W.3d 24, 26 (Tex. App.CAmarillo 
2000, no pet.)).

Fourth, 
the majority=s 
decision that the handbook adds an employee=s FMLA 
leave to the one-year limitation in the CBA makes even less sense when 
considering the other types of leave that are mentioned in the handbook and are 
also necessarily added to the one-year period under the majority=s 
reasoning, such as holidays and vacations.  
The CBA provides appellants= 
employees with eleven holidays.  
Because Thomas had been employed by appellants for more than nine years, 
he also received three weeks= paid 
vacation.  Thus, under the 
majority=s 
reasoning, when considering Thomas=s 
twelve weeks of FMLA leave, his more than two work weeks of combined holidays, 
and his three weeks of vacation, appellants could not have terminated 
Thomas=s 
employment until more than seventeen weeks (about four months), at a minimum, 
had passed after he had already been unable to work for a year.  Appellants would then have to further 
add to that time any days off related to his jury duty, bereavement or 
administrative leave, or  
Aapproved 
union business.@  As can be seen, the majority=s 
decision has turned a simple phraseCAabsence 
from work for any reason other than military leave for a period of more than one 
(1) year@Cinto a 
mathematical enigma that could justify Thomas=s 
absence from work for close to a year and a 
half.

Finally, 
the majority=s 
holding that the handbook adds to the CBA=s 
contractual language becomes further strained when considering that in the 
handbook, appellants Areserve[d] 
the right to change, revise, or eliminate any of the [handbook=s] 
policies.@  Under the majority=s 
reasoning, although FMLA leave must be added to the CBA=s 
one-year limitation today, it may not be added to that limitation tomorrow if 
appellants choose to modify the handbook.  
Such fluidity is obviously at odds with our task of interpreting the 
parties= 
contractual bargain.  See 
Gamble v. Gregg County, 932 S.W.2d 253, 255 (Tex. App.CTexarkana 
1996, no writ) (indicating that an employee handbook does not express an intent 
to vest contractual rights when it Aexpressly 
provides that the [employer] may unilaterally change the policies and 
practices@); 
Ryan v. Superior Oil Co., 813 S.W.2d 594, 596 (Tex. App.CHouston 
[14th Dist.] 1991, writ denied) (holding that a vacation plan that stated that 
it could Abe 
terminated or modified at any time@ did 
not create a contractual obligation).
For 
all of these reasons, the handbook, as a matter of law, cannot enlarge or modify 
the CBA=s 
provisions, and it cannot serve as the basis for Thomas=s 
breach of contract claim.  
And even if the handbook=s 
provisions created doubt on interpreting the CBA=s 
termination language, the majority should have resolved those doubts in 
appellants= 
favor.  See IHS Cedars Treatment 
Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).
Because 
the trial court improperly granted summary judgment on Thomas=s 
claim for breach of the CBA, I would sustain appellants= 
second issue and reverse this case.  
Because the majority affirms the trial court, I respectfully 
dissent.
 
TERRIE 
LIVINGSTON
JUSTICE
 
DELIVERED:  October 29, 
2009




[1]McDonald manages the 
public transportation bus system owned by FWTA, which is a political subdivision 
of the state.  McDonald and FWTA do 
not argue on appeal that their liability should be considered separately.  Thus, we refer to McDonald and FWTA, 
collectively, as appellants.

[2]See 29 U.S.C.A. '' 2601B2654 (West 2009).  The FMLA guarantees qualifying employees 
twelve weeks of unpaid leave each year for disabling health problems, family 
members= serious illnesses, or 
the birth of a new son or daughter; employers are prohibited from interfering 
with such leave.  
See Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 
84B86, 122 S. Ct. 1155, 
1158B60 
(2002).

[3]Thomas again failed a 
performance evaluation in June 2002.

[4]The parties refer to this 
agreement as a collective bargaining agreement, and we will refer to the 
agreement as the ACBA@ in this 
opinion.

[5]During the grievance 
process, appellants gave Thomas another opportunity to pass the performance 
evaluation and be reinstated.  It is 
unclear from the record whether Thomas accepted appellants= offer to retake the 
performance evaluation.

[6]Thomas affirmed during 
deposition testimony that he was a member of this union; he also filed an 
affidavit stating that he was Acovered by the 
[CBA].@

[7]Appellants have 
maintained throughout the proceedings in the trial court and on appeal that this 
provision of the CBA was the sole basis of the termination of Thomas=s 
employment.

[8]Thomas=s only pleaded theory of 
recovery at this time is his theory that appellants breached the terms of the 
CBA.  Thomas nonsuited all of his other 
claims.

[9]Thomas also sought 
summary judgment on his discrimination claim, but the trial court denied the 
motion as to that claim.  Thomas 
does not challenge that ruling in this appeal.

[10]Appellants contended in 
their reply brief and at oral argument that Thomas failed to assert the 
AManagement 
Rights@ exclusion from the 
arbitration requirement in the trial court and that this exclusion cannot be 
raised for the first time on appeal.  
We disagree.  The record 
indicates that Thomas raised the AManagement 
Rights@ issue in his reply to 
appellants= response and objections 
to his amended summary judgment motion.

[11]While there is no 
provision of the CBA titled ARights of 
Management@ as denoted by Article 
13, Section C, we conclude that Article 3, pertaining to AManagement 
Rights,@ is the title to which 
Article 13, Section C refers.

[12]Appellants have not 
asserted that any provision of the CBA expressly abridged its Amanagement 
right@ to discharge 
Thomas=s 
employment.

[13]Thomas also contends that 
appellants forfeited any right to arbitration by violating the grievance 
procedure and by their litigation conduct and that any failure to arbitrate was 
harmless error.  Because we conclude 
that the arbitration requirement did not apply to Thomas=s discharge, we do not 
address these other assertions.

[14]Thomas also argues on 
appeal that his FMLA leave cannot be counted as an Aabsence@ under Article 20 because 
doing so violates the FMLA.  Because 
A[t]he assertion of new 
grounds before the appellate court in support of summary judgment may prejudice 
the nonmovant=s ability to demonstrate 
that the issue raises a genuine issue of material fact,@ we cannot affirm a 
summary judgment Aon grounds not expressly 
set out in the motion or response.@  Stiles v. 
Resolution Trust Corp., 867 S.W.2d 24, 26 (Tex. 1993).  Thomas did not include this argument in 
his amended motion for summary judgment or in any other document filed with the 
trial court.  Thomas cited the 
applicable federal regulation, 29 C.F.R. ' 825.220 (2009), in his 
reply to appellants= response and objections 
to his first amended motion for summary judgment, but only for the proposition 
that he was not required to arbitrate his claim against appellants.  We are therefore prohibited from 
affirming the summary judgment on this ground.  See Stiles, 867 S.W.2d at 26; 
Franco v. Slavonic Mut. Fire Ins. 
Ass=n, 154 S.W.3d 777, 786 
(Tex. App.CHouston [14th Dist.] 
2004, no pet.).

[15]Federal law requires 
appellants to include their FMLA policies in the Operator Handbook.  See 29 C.F.R. ' 825.300(a)(1), (3) (West 
2009) (requiring FMLA-covered employers to provide its eligible employees with a 
notice explaining the provisions of the FMLA and to Ainclud[e] the notice in 
employee handbooks . . . if such written materials exist@).

[16]This type of contractual 
provision is commonly referred to as a Amerger 
clause.@  AMerger occurs when the 
same parties to an earlier agreement later enter into a written integrated 
agreement covering the same subject matter.@  Texas A&M Univ.BKingsville v. 
Lawson, 
127 S.W.3d 866, 872 (Tex. App.CAustin 2004, pet. 
denied).  This merger clause does 
not prevent consideration of the Operator Handbook because the CBA pre-dates the 
Operator Handbook.

[17]Our precedent establishes 
that as a general rule, employee handbooks and policy manuals constitute general 
guidelines in the employment relationship and do not create implied contracts 
between the employer and employee that alter the at-will employment 
relationship.  Brown v. Sabre, Inc., 173 S.W.3d 581, 585 (Tex. App.CFort Worth 2005, no 
pet.).  Our decision today does not 
conflict with Brown.  Thomas 
was not an at-will employee; the CBA governed the terms and conditions of his 
employment with appellants.  And, 
contrary to the dissent=s characterization of our 
holding, we do not say that the Operator Handbook created contractual 
rights.  We consider the CBA with 
the Operator Handbook only to determine the intent of the parties concerning 
FMLA leave in the context of Article 20 of the CBA.

[18]This provision also does 
not exempt bereavement leave from an absence justifying termination, but we note 
that Article 36 of the CBA provides: AEmployees taking approved 
bereavement leave shall not be charged with an absence.@

[19]There is no dispute in 
this case that Thomas was in fact eligible for leave under 
appellants= FMLA policy as stated in 
the Operator Handbook.

[20]Although Aa court may conclude that 
a contract is ambiguous even in the absence of such a pleading by either 
party,@  McCreary v. Bay Area Bank & 
Trust, 68 S.W.3d 727, 730B31 (Tex. App.CHouston [14th Dist.] 
2001, pet. dism=d), we do not find that 
the CBA is ambiguous.  Instead, 
after applying the pertinent rules of construction and considering the CBA and 
the Operator Handbook together, we find that the provision in Article 20 under 
which Thomas was terminated is susceptible to only one reasonable 
interpretation:  FMLA leave cannot 
be counted as an absence when terminating an employee for an absence exceeding 
one year.

[21]As the majority explains, 
Thomas relies on portions of the handbook that state that FMLA leave is 
Anot counted as 
absenteeism@ and exclude FMLA leave 
from the handbook=s definition of 
Aabsence.@  Majority op. at 
18.  Those portions of the 
handbook are relevant to the handbook=s Attendance Control 
Program, which sets forth increasing disciplinary actions for employees 
accumulating several absences during a rolling twelve‑month period.  The program does not explicitly relate 
to absences lasting longer than one year, as does the 
CBA.

[22]In accordance with that 
entitlement, the CBA expresses that in crafting that document, 
Thomas=s union and appellants 
each Ahad the unlimited right 
and opportunity to make demands and proposals with respect to all proper 
subjects of collective bargaining and that all such subjects [had] been 
discussed and negotiated upon and the agreements contained in this contract [had 
been arrived upon] after the free exercise of such rights and 
responsibilities.@





 [COMMENT1]
Majority opinion by 
Gardner; Dissenting opinion by Livingston