

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00783-CV

**THE CITY OF SAN ANTONIO**,
Appellant

v.

**INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS**, Local 624

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-CI-16015
Honorable Laura Salinas, Judge Presiding

No. 04-13-00109-CV

**IN RE THE CITY OF SAN ANTONIO**

Original Mandamus Proceeding[1]

Opinion by:     Catherine Stone, Chief Justice
Dissenting Opinion by:  Rebeca C. Martinez, Justice

Sitting:        Catherine Stone, Chief Justice
                Karen Angelini, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  October 2, 2013

REVERSED AND RENDERED
PETITION FOR WRIT OF MANDAMUS DENIED

---

[1] The proceeding in Cause No. 04-13-00109-CV arises out of Cause No. 2012-CI-16015, styled *Int'l Ass'n of Fire Fighters, Local 624 v. City of San Antonio*, pending in the 45th Judicial District Court, Bexar County, Texas, the Honorable Martha Tanner presiding. However, the orders complained of were signed by the Honorable Laura Salinas, presiding judge of the 166th Judicial District Court, Bexar County, Texas.

This case involves a dispute between the City of San Antonio and the International Association of Fire Fighters, Local 624 (the Union), which represents firefighters employed by the City. The Union filed suit in district court, alleging the City unilaterally changed the terms of the parties' collective bargaining agreement (CBA) regarding health-care benefits, and claiming the City's unilateral actions violate its statutory duty to engage in good-faith collective bargaining. The City denied the Union's allegations and filed a motion to abate the proceedings on the grounds that the Union's claim is subject to arbitration under the terms of the CBA and that the Union failed to exhaust its administrative remedies under the CBA. The trial court denied the City's motion to abate, and the City now pursues two alternative means of review, both a petition for a writ of mandamus and an interlocutory appeal. At this juncture of the litigation this court is not asked to determine the merits of the case, that is, whether the City has in fact violated its statutory duty to engage in good faith collective bargaining. Rather, the issue at hand is what venue is appropriate for resolution of the Union's claim: judicial review and remedy as advocated by the Union, or arbitration as advocated by the City. For the reasons stated below, we determine that resolution of the Union's claim must be submitted to arbitration.

## BACKGROUND AND PROCEDURAL POSTURE

### A. The Controversy

The Union and the City are bound by a CBA that provides for conditions of employment, including health-insurance coverage for members of the Union and their dependents. In September of 2012, the Union filed suit against the City, alleging that the City violated Chapter 174 of the Texas Local Government Code by unilaterally altering the prerequisites for health-insurance coverage of firefighters and their dependents without engaging in good-faith collective bargaining with the Union. Specifically, the Union complains that the City unilaterally changed the CBA's terms by: (1) requiring active enrollment in order for the firefighters to continue receiving

health-care benefits; and (2) threatening termination of coverage for currently covered dependents unless the firefighters provide additional information.

### B. The Union's Suit

The Union's suit sought a declaratory judgment that the City had violated sections 174.023 and 174.105 of the Local Government Code by unilaterally changing the terms of the CBA without participating in the collective-bargaining procedure required by statute. In response, the City filed a motion to abate, alleging that the Union's suit was subject to the arbitration procedure set forth in the CBA because the lawsuit concerned the interpretation or application of the CBA. The Union responded to the City's motion to abate, claiming that the City had mischaracterized its lawsuit as one involving interpretation or application of the CBA, when the Union's suit was actually based on its statutory right to participate in good-faith collective bargaining regarding conditions of employment.

### C. The Trial Court's Ruling

Following a hearing in October of 2012, Judge Martha B. Tanner denied the City's motion to abate for arbitration. The City filed a motion to reconsider the motion to abate, which was presented to Judge Tanner's successor, Judge Laura Salinas. Judge Salinas denied reconsideration of the motion in February of 2013.

### D. The City's Appellate Proceedings

The City has filed two separate appellate proceedings, both designed to obtain a ruling requiring the parties to submit this health benefits controversy to arbitration. First, the City filed an accelerated appeal seeking enforcement of the CBA's arbitration procedure under the Federal Arbitration Act (FAA). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West Supp. 2012). The City also filed a petition for writ of mandamus in this court, which seeks to compel the Union to participate in the CBA's arbitration procedure pursuant to Texas common law. The City's

petition for writ of mandamus is an alternate method of obtaining its desired relief if its interlocutory appeal fails. There is no statutorily-permitted appeal of a motion to compel arbitration under the common law of Texas, so a mandamus proceeding is the appropriate method for seeking this relief. *In re Villanueva*, 311 S.W.3d 475, 481 (Tex. App.—El Paso 2009, orig. proceeding); *see also Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992). Therefore, we must first decide which appellate review vehicle is proper, mandamus or interlocutory appeal. In order to decide that question, we must determine if the CBA is governed by the FAA or the Texas common law.

## IS THE CBA GOVERNED BY THE FAA?

The FAA applies to "contract[s] evidencing a transaction involving commerce," and it generally requires arbitration when the contract contains an arbitration agreement and is valid and enforceable. 9 U.S.C. § 2. The United States Supreme Court has declared that the FAA should be read broadly to include any contract that evidences a transaction affecting interstate commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74 (1995); *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 126 (Tex. 1999) (per curiam) (orig. proceeding). In other words, Congress intended the FAA to reach as far as Congress's Commerce Clause power. *Allied-Bruce Terminix*, 513 U.S. at 274; *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001). "The issue is not whether the parties' dispute affects interstate commerce, but whether their dispute concerns a transaction that affects interstate commerce." *In re Merrill Lynch Trust Co. FSB*, 123 S.W.3d 549, 553 (Tex. App.—San Antonio 2003, orig. proceeding).

Broad interpretation of transactions involving interstate commerce has led courts to apply the FAA to contracts with some connection to interstate commerce, despite the contract being between parties located in the same state and primarily concerned with intrastate activity. *See, e.g.*, *In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 69 (Tex. 2005) (per curiam) (arbitration

agreement governed by the FAA when Medicare reimbursed the hospital for treatment of a patient whose wife later sued for wrongful death).

The Union does not agree that its claim is subject to arbitration under the CBA. Indeed, whether the Union is entitled to judicial relief or relief via arbitration is the very issue at hand at this stage of the proceedings. In the event the issue must be submitted to arbitration, however, it appears the Union does not dispute that the FAA governs the CBA rather than the Texas common law. In light of the relevant case law, and given the Union's acknowledgment, we conclude that to the extent the CBA's arbitration provision applies to the instant controversy, it is governed by the FAA. Accordingly, we will proceed on the City's interlocutory appeal, and we deny the City's petition for a writ of mandamus.

### IS THE UNION'S CLAIM WITHIN THE SCOPE OF THE CBA'S ARBITRATION AGREEMENT?

We must next determine whether the Union's claim falls within the scope of the CBA's arbitration agreement. The Union does not dispute the FAA's applicability to disputes arising out of the CBA. Instead, the Union argues "this is a case seeking a declaration that the City has violated state law through unfair labor negotiations, and not a case seeking to uphold any rights or duties under the current [CBA] between the parties, [and thus] the provision in the CBA requiring arbitration in certain cases is simply inapplicable." This argument is based on case law from the United States Supreme Court that permits a unionized employee to file statutory claims in a judicial forum despite the existence of a valid CBA with an arbitration agreement. *See, e.g.*, *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009); *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 80 (1998); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 38 (1974); *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 359–60 (5th Cir. 2012). Relying on this authority, the Union asserts that its claim is likewise a statutory claim distinct from the CBA, and thus not governed by the CBA's arbitration provisions. In contrast, the City argues that the Union's claim is not a statutory claim

independent of the CBA and that the line of authority relied upon by the Union does not apply to this case. We agree with the City.

## A. Standard of Review

We generally review a trial court's decision on a motion to compel arbitration for an abuse of discretion, affording deference to the court's factual determinations, but reviewing legal questions de novo. *Garcia v. Huerta*, 340 S.W.3d 864, 868–69 (Tex. App.—San Antonio 2011, pet. denied). The existence and the applicability of the arbitration agreement is a question of law and, thus, we review the decision de novo. *Id.* at 869; *see also Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 n.9 (Tex. 2008). "An error in determining what the law is or applying the law to the facts constitutes an abuse of discretion." *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703–04 (Tex. 1998) (per curiam) (orig. proceeding). If the arbitration agreement includes the claims at issue and the opposing party cannot prove any defense preventing arbitration, "the trial court has no discretion but to compel arbitration and stay its own proceedings." *In re FirstMerit Bank*, 52 S.W.3d at 753–54.

## B. Scope of the CBA's Arbitration Agreement

### 1. Applicable Law

In order to succeed on a request to compel arbitration, the party must demonstrate that a valid arbitration agreement exists and that the claim at issue falls within the scope of the agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *In re Wells Fargo Bank, N.A.*, 300 S.W.3d 818, 823 (Tex. App.—San Antonio 2009, orig. proceeding). Once the existence of a valid arbitration agreement is established, a strong presumption favoring arbitration arises. *In re FirstMerit Bank*, 52 S.W.3d at 754; *Garcia*, 340 S.W.3d at 868–69. To rebut this presumption, the party opposing arbitration bears the burden of providing a defense to enforcement of the agreement to arbitrate. *Garcia*, 340 S.W.3d at 868–69.

Any doubts about the scope of an arbitration agreement must be decided in favor of arbitration. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 782 (Tex. 2006); *In re FirstMerit Bank*, 52 S.W.3d at 753. If an arbitration agreement is established, "an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Wright*, 525 U.S. at 78 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986)) (internal quotation marks omitted); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (per curiam) (orig. proceeding).

## 2. Terms of the CBA

In this case, the parties' fundamental dispute is whether the Union's claim is statutory in nature or based on an interpretation or application of the CBA's terms. Article 30 of the CBA, entitled "Grievance Procedure," states as follows:

Section 1. Scope of Procedure.

The purpose of this Article is to provide a just, equitable, and expeditious method for resolving disputes between the City and the Union (or employees) concerning all aspects of the employment relationship between the City and bargaining unit employees, and concerning the bargaining relationship between the City and the Union. To that end, the parties hereby agree and stipulate as follows:

A. All disputes concerning the interpretation and/or application of the terms of this Agreement shall be submitted, if at all, to the grievance/arbitration procedure as called for herein. . . .

B. Employee claims of violation of statutory or constitutional rights may be submitted to the grievance/arbitration procedure or may be pursued by means of judicial and/or administrative appeal . . . . It is recognized that claims falling under the subparagraph may be included with related claims of contract violations. In such circumstances, the City shall not be entitled to abatement of a suit involving the contract claims, related to the statutory or constitutional claims asserted, for failure to grieve such contract matters initially. . . .

A review of these terms of the CBA reveals the parties' intention that: (1) disputes based solely on "the interpretation and/or application" of the CBA be submitted to the arbitration procedure; and (2) employees have the choice to pursue claims based on a statutory violation using either the arbitration procedure or a judicial forum, even if related contract claims are also made. Although denying that the claim in this case is statutory, the City argues that, regardless, subpart B applies only to an *employee's* individual claims, not a union's claims.

### 3. The Union's Claim Requires Interpretation or Application of the CBA's Terms

The Union asserts that its claim is separate and distinct from the CBA and does not involve the interpretation or application of the CBA's terms. Because health-care benefits are a condition of employment and Chapter 174 requires collective bargaining for conditions of employment, the Union argues that any obligations related to benefits coverage are subject to the collective bargaining rules of Chapter 174. Specifically, the Union seeks a declaration that the City violated its duty to participate in good-faith collective bargaining when it allegedly unilaterally altered the requirements for eligibility to receive health-care benefits, and it seeks to enjoin the City from denying health-care coverage to firefighters who refuse to be actively enrolled or to dependents of firefighters who do not provide the additional information requested.

The Union pleaded in the trial court and argues on appeal that its claim is based on the City's alleged violation of sections 174.023 and 174.105 of the Local Government Code. Section 174.023 provides that "fire fighters . . . are entitled to organize and bargain collectively with their public employer regarding compensation, hours, and other conditions of employment." TEX. LOC. GOV'T CODE ANN. § 174.023 (West 2008). Section 174.105 requires unionized employees and the public employer to "confer in good faith regarding compensation, hours, and other conditions

of employment or the negotiation of an agreement or a question arising under an agreement."[2]

TEX. LOC. GOV'T CODE ANN. § 174.105 (West 2008).

When determining whether a party's claims are within the scope of an agreement, "we focus on the complaint's factual allegations rather than the legal causes of action asserted." *In re FirstMerit Bank*, 52 S.W.3d at 754. The Union contends the following text from its petition contains three extra-contractual factual allegations:

> There is no authorization for the City to perform "active enrollment" with regard to fire fighter health benefits in either the CBA or the Master Contract Document. There is no authorization in either the CBA or the Master Contract Document for the City's demand for additional documentary verification by fire fighters for depend[e]nts that the City has already deemed to be covered depend[e]nts under the CBA. Finally, there is no authorization in either the CBA or the Master Contract Document for cancelling depend[e]nts when a covered employee refuses to respond to a request by the City for additional documentary information. None of these matters were the subject of collective bargaining, yet each of these matters strikes at the heart of a condition of employment for fire fighters—the ability to provide insurance coverage for their depend[e]nts. The post card[] and the threat by the City of termination of coverage for failure to comply with the City's demand for additional documentary information thus serve as unilateral actions taken by the City that should have been the subject of negotiations and, if approved, inclusion within the CBA and/or its attachments, including the Master Contract Document. The City's unilateral decision to alter the terms of the Collective Bargaining Agreement without notice, negotiation[,] and approval by [the Union] serves as the basis for this petition seeking declaratory and injunctive relief.

Although the Union's petition contains repeated references to the terms of the CBA and the Master Contract Document, including multiple citations to and quotes from both contracts, the Union insists that the petition asks the trial court to determine the meaning of provisions of Chapter 174 and to declare a violation of those provisions. We do not agree. The Union seeks a judicial declaration that the City has, without authority, changed health-care benefit eligibility without bargaining collectively. A court cannot make such a declaration without first interpreting the

---

[2] We note that section 174.105 generally requires employers and unions to confer in good faith about "questions arising under" a CBA; however, in this case, the CBA specifically provides that disputes involving the "interpretation and/or application" of the CBA are subject to the grievance process.

current CBA provisions regarding health-care benefits, and then determining whether the information or action required by the City alters or changes the CBA's current provisions. Therefore, we conclude this claim is within the scope of the arbitration agreement.[3]

Although the Union couched its suit as a declaratory judgment action based on a statute, the thrust of its complaint arises under the very terms of the CBA, and thus its pleading as a declaratory judgment suit does not control. *See Rapid Settlements, Ltd. v. SSC Settlements, LLC*, 251 S.W.3d 129, 144 (Tex. App.—Tyler 2008, no pet.) (holding that the trial court erred in granting a declaratory judgment that "usurped [the] . . . right to a meaningful arbitration" when the court necessarily had to interpret the underlying contract to determine the parties' rights). Further, we are not persuaded by the Union's argument that a judicial declaration and injunction are appropriate because it has once before obtained this very relief at the trial court level when addressing concerns about an earlier CBA. Absent legal principles not at issue here, we are not bound by a trial court's decision that has not been reviewed and upheld on appeal. *Cf. Bollner v. Plastics Solutions of Tex., Inc.*, 270 S.W.3d 157, 166 (Tex. App.—El Paso 2008, no pet.) ("Erroneous conclusions of law are not binding on the appellate court . . . .").

A situation similar to the issue presented in the instant case has previously been addressed by the United States Court of Appeals for the Eighth Circuit. *See United Steelworkers of Am., AFL-CIO-CLC, Local No. 164 v. Titan Tire Corp.*, 204 F.3d 858, 861 (8th Cir. 2000). In that case, however, the parties' arguments were reversed, with the union arguing that the employer's unilateral change in the copayment percentage under the group medical insurance plan was subject

---

[3] We note that the City quotes provisions from the CBA and the Master Contract Documents in its original answer that were not quoted in Local 624's pleadings, and the City contends those provisions authorized its actions regarding active enrollment and the requests for additional information regarding dependents. While we make no comment on whether the quoted provisions authorize the City's actions, we note that both parties' references to different provisions of the CBA bolster our conclusion that any declaration regarding whether or not the City unilaterally altered health-care benefits necessarily involves an interpretation of the provisions in the CBA pertaining to those benefits.

to arbitration, while the employer argued the dispute was not subject to arbitration because the CBA did not specifically address or was silent with regard to the amount of the copayment. *Id*. at 860, 861. The Eighth Circuit affirmed the trial court's ruling that the grievance "concerned disputes of fact and/or the meaning, interpretation, or application of the CBA and, therefore, were arbitrable." *Id*. The Eighth Circuit reasoned:

> [The grievance] concerns a dispute over the meaning, interpretation, or application of the provision in the CBA pertaining to health insurance coverage. It is the arbitrator's duty to fill in the gaps of a collective bargaining agreement. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580–81 (1960) ("The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.").

*Id.* at 861. The broad arbitration agreement and the complaint lodged by the union in *United Steelworkers* are comparable to the arbitration agreement and complaint lodged by the Union in this case. Therefore, like the Eighth Circuit, we conclude that the complaint in this case involves the interpretation or application of the CBA, and thus is subject to arbitration.

At our request, during oral argument the parties addressed the applicability, if any, of *City of Laredo v. Mojica*, 399 S.W.3d 190 (Tex. App.—San Antonio 2012, pet. denied). Based on the arguments presented, we have determined that *Mojica* is inapplicable to the issue at hand. In *Mojica*, this court determined that section 174.253 regarding review of an arbitration award did not apply to cases where the issue being arbitrated arose from an already-existent CBA. *Id.* at 194. Isolating the statement that Chapter 174 "applies only to arbitration for collective bargaining impasses," *id.*, the City argued that *Mojica* barred the Union's claims because Chapter 174 would not apply to claims based on the fully negotiated CBA in this case. We decline to extend *Mojica*'s holding by applying an unnecessarily broad interpretation of the language used.

## IS ABATEMENT OR DISMISSAL THE APPROPRIATE REMEDY?

In its briefing on interlocutory appeal, the City asks this court to dismiss the Union's cause of action because the Union did not exhaust the grievance procedure. The City alleges that a failure to exhaust the grievance procedure is akin to a failure to exhaust administrative remedies, therefore depriving the trial court of jurisdiction to hear the case. *Cf. Bexar Cnty. v. Gant*, 70 S.W.3d 289, 292–93 (Tex. App.—San Antonio 2002, pet. denied) (concluding the trial court lacked jurisdiction over a claim made by the appellee because he did not exhaust administrative remedies as required under the applicable statute before filing suit).

The City argues that similar to a failure to exhaust administrative remedies under certain statutes, the failure to exhaust grievance procedures under a CBA deprives the trial court of jurisdiction. The City cites several cases in support of this contention. *See Fort Worth Transp. Auth. v. Thomas*, 303 S.W.3d 850, 855–56 (Tex. App.—Fort Worth 2009, pet. denied); *International Union United Auto. Aerospace & Agr. Implement Workers of Am. Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 565 (Tex. App.—Dallas 1991, writ denied); *Roberts v. City of Corpus Christi*, 744 S.W.2d 214, 215–16 (Tex. App.—Corpus Christi 1987, no writ); *see also City of Houston v. Williams*, 353 S.W.3d 128, 147 (Tex. 2011). None of these cases, however, squarely address the issue of whether a failure to exhaust grievance procedures under a contract, as opposed to a failure to exhaust administrative remedies under a statute, deprives the trial court of jurisdiction. Instead, most of the cases explain that a party must generally exhaust the remedies provided for under a contract before filing suit in court. The City has not cited, nor have we found, any case holding that a failure to exhaust a contractual grievance procedure deprives a trial court of jurisdiction to determine whether a suit filed prior to the exhaustion of these proceedings is premature.

Moreover, none of the contracts in the cases cited by the City stated that a failure to exhaust the remedies set out in the contract would result in a plea in abatement. Section 1 of Article 31 of the CBA in this case, entitled Exhaustion of Remedies, specifically did so:

> The City, the Union, and the Fire Fighters covered herein[] shall be required to exhaust all available remedies through grievance and/or the Civil Service Commission prior to proceeding to a court of law, state or federal administrative agency, or other regulatory body, except as provided in Article 30, Grievance Procedure. Failure to do so will act as a plea in abatement to any such court, administrative body, and/or regulatory agency proceeding until the exhaustion of remedies provided for in this Agreement have been completed to finality.

Because we look to the contract to determine whether the parties' claims are subject to the grievance procedure, we will also look to the contract to determine the appropriate remedy, if one is articulated, for a failure to exhaust the grievance procedure. We conclude that the CBA is controlling in this case, and the CBA provides for abatement if either party pursues judicial relief before exhausting the grievance procedure articulated in the CBA. Because the parties have contracted for an abatement of the proceedings until the remedies provided for in the CBA have been exhausted, we hold that an abatement is the appropriate disposition in this case.

## CONCLUSION

We conclude that the City's interlocutory appeal is the proper proceeding in this court because the Union's claim is subject to the FAA; therefore, the City's petition for a writ of mandamus is denied. We also conclude that the Union's complaint involves the interpretation or application of the CBA, and thus is within the scope of the CBA's arbitration agreement. Accordingly, we reverse the trial court's order on the City's motion to abate, and we abate the underlying lawsuit "until the exhaustion of remedies provided for in this [CBA] have been completed to finality."

Catherine Stone, Chief Justice